[No. 20407-3-III.   Division Three.   August 15, 2002.]

MOUNT ADAMS SCHOOL DISTRICT, *Respondent*, v. WILLIAM D. COOK, ET AL., *Appellants*.

474

*Kevan T. Montoya* and *Juan G. Ibarra* (of *Velikanje, Moore & Shore, P.S.*), for appellants.

*Rockney L. Jackson* and *Kirk A. Ehlis* (of *Menke, Jackson, Beyer, Elofson, Ehlis & Harper*), for respondent.

KURTZ, J. — William Cook completed the course work required to renew his teaching certification, but did not have a certificate on the first day of school as required by his contract. The Mount Adams School District (the District) terminated Mr. Cook. Mr. Cook sought arbitration, but the District sought declaratory relief in superior court. The court granted the District's motion for summary judgment concluding that Mr. Cook's teaching contract was invalid by operation of law and enjoined Mr. Cook from proceeding with arbitration. Mr. Cook appeals contending the court erred by (1) deciding this issue was not reserved for the arbitrator under the collective bargaining agreement, (2) deciding Mr. Cook breached his contract with the District, and (3) not estopping the District from terminating Mr. Cook when the District encouraged him to take the classes that made the renewal of his certificate untimely. We affirm the superior court.

## FACTS

William Cook was a certificated alternative school teacher for the Mount Adams School District. He is a member of the Mount Adams Education Association (MAEA) and the Washington Education Association (WEA). The District and MAEA agreed to a collective bargaining agreement for the 1997 through 2000 school years.

On May 15, 2000, Mr. Cook signed a "Certificated Employee Contract" to teach for the 2000 through 2001 school year. It stated, in part:

> THIS CONTRACT SHALL BE SUBJECT TO THE TERMS AND CONDITIONS OF ANY AGREEMENT BETWEEN THE DISTRICT AND THE ORGANIZATION CERTIFIED AS THE NEGOTIATING REPRESENTATIVE FOR THE CERTIFICATED PERSONNEL EMPLOYED BY THE BOARD.
>
> *THIS CONTRACT DOES NOT BECOME EFFECTIVE UNTIL SAID EMPLOYEE REGISTERS WITH THE DISTRICT SUPERINTENDENT'S OFFICE (1) A VALID TEACHING CERTIFICATE*, (2) AN OFFICIAL TRANSCRIPT OF PREPARATION, (3) AN OFFICIAL VERIFICATION OF EXPERIENCE, AND (4) ANY OTHER REQUIRED CREDENTIAL.

Clerk's Papers (CP) at 188 (emphasis added).

Cleo Ritchie, the personnel person for the District, sent notices to Mr. Cook on March 1, 1999, March 11, May 2, and August 4, 2000, in which she informed Mr. Cook that his teaching certificate was expiring on June 30, 2000. Mr. Cook needed 15 credits to renew his teaching certificate.

In January 2000, Mr. Cook received a letter from Central Washington University informing him that Central would not grant him credit for classes he had previously taken. In an effort to get the credits necessary to renew his certification, Mr. Cook completed a course in school law through Bates Technical College in June for three credits. Mr. Cook successfully completed a Teacher Leadership Project course through the Gates Foundation on August 17, for three credits. Also, Gary Fendell, principal of White Swan High School in the District, applied for a grant through the state

of Washington that allowed Mr. Cook to become certified as a driver's education teacher. Mr. Cook successfully completed the driver's education course in mid-August and received 12 credits. In addition, Mr. Cook received a lifetime substitute teaching certificate on August 14. Throughout this time, Mr. Cook was in contact with Ms. Ritchie, keeping her informed of his efforts to get his credits.

The Office of the Superintendent of Public Instruction will not issue a permit, a prerequisite for a certificate, unless it has a transcript to show that the classes have been successfully completed. Mr. Cook did not receive the certificate for the driver's training course from Central until August 23. On that same day, he faxed a copy to the Education Service District, to the attention of the person in charge of teacher certification. Coincidentally, this was also the first work day for all the teachers in the district. Therefore, Mr. Cook did not have a valid teaching certificate on the first day of employment. As a result, Mary Hall, the Superintendent of the District, mailed Mr. Cook a termination notice on August 23, which he received on August 28. Mr. Cook received his renewed continuing permit on August 29, and he immediately faxed it to Ms. Ritchie.

The MAEA requested arbitration of Mr. Cook's termination under the collective bargaining agreement. The District proceeded through the first three steps of the grievance process. The District had a grievance appeal hearing to address Mr. Cook's termination, which resulted in the denial of his grievance. An arbitration was scheduled for August 24, 2001, and an arbitrator was chosen.

The District filed in superior court for declaratory and injunctive relief. The District asked that the court declare that there was no contract between Mr. Cook and the District. The court granted the District's motion for summary judgment concluding that Mr. Cook's certificate lapsed on June 30, 2000, and Mr. Cook's employee contract was invalid by operation of law as of August 23, 2000, because he did not possess a teaching certificate on the first day of employment. The court enjoined the MAEA and Mr.

Cook from proceeding with the arbitration proceedings. Mr. Cook's motion for reconsideration was denied. Mr. Cook appeals.

## ANALYSIS

*Standard of Review.* Mr. Cook contends the court erred by determining that this matter was not subject to arbitration. He argues that the collective bargaining agreement contains a broad arbitration clause requiring that substantive and procedural arbitrability issues shall be determined by the arbitrator.

■ We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider all facts and reasonable inferences in the light most favorable to the nonmoving party. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). We review questions of law de novo. *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993). We resolve the threshold legal question of arbitrability of the dispute by examining the arbitration agreement without inquiry into the merits of the dispute. If the dispute can fairly be said to invoke a claim covered by the agreement, our inquiry is at an end. *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Employees*, 130 Wn.2d 401, 413, 924 P.2d 13 (1996); *Local Union No. 77, Int'l Bhd. of Elec. Workers v. Pub. Util. Dist. No. 1*, 40 Wn. App. 61, 64, 696 P.2d 1264 (1985) (holding that if a labor dispute is governed on its face by an agreement to arbitrate, the court's inquiry is at an end).

*Arbitration.* Washington courts apply a strong presumption favoring arbitration. Four principles govern arbitrability:

(1) the duty to submit a matter to arbitration arises from the contract itself; (2) the question of whether parties have agreed to arbitrate a dispute is a judicial one unless the parties clearly provide otherwise; (3) a court should not determine the under-

lying merits of a dispute in determining the arbitrability of an issue; and (4) arbitration of disputes is favored by the courts. *W.A. Botting Plumbing & Heating Co. v. Constructors-Pamco,* 47 Wn. App. 681, 683, 736 P.2d 1100 (1987).

Article IX of the collective bargaining agreement between the MAEA and the District provides the procedure governing grievances. Article IX, section 2, step IV of the agreement explains the association's right to arbitrate and the procedure for that arbitration. Article IX, section 4 states in part:

> Upon request of either party, the merits of a grievance and the substantive and procedural arbitrability issues arising in connection with that grievance may be consolidated for hearing before an arbitrator provided the arbitrator shall not resolve the question of arbitrability of a grievance prior to having heard the merits of a grievance.

CP at 61. Article IX, section 9B of the collective bargaining agreement states that "[if] an employee is discharged or non-renewed and requests a hearing, then the District, the employee or the Association may elect to resolve the dispute through arbitration . . . ." CP at 62.

■ However, article I, section 3A describes the bargaining unit for the collective bargaining agreement as "[t]he regular full-time and regular part-time certificated personnel who hold valid contracts with the District." CP at 23. Mr. Cook was not certificated and did not hold a valid contract with the District at the time he was fired. Mr. Cook's contract with the District did not become effective until he had a valid teaching certificate. Because his teaching certificate expired, Mr. Cook did not have a valid contract with the District and he was not a member of the bargaining unit under the collective bargaining agreement. Therefore, the District was not required to arbitrate this matter and the court properly enjoined Mr. Cook from seeking binding arbitration.

Mr. Cook argues that the District cannot deny arbitration after proceeding through the first three steps in an arbitra-

tion. However, article IX, section 7 states that "[c]omplaints not involving the Collective Bargaining Agreement may be processed by the Association through Steps I, II, and III but not to arbitration." CP at 61. Thus, the District could process a grievance through the first three steps of the grievance procedure, but it was not required to arbitrate. The court did not err by determining that this matter was not subject to arbitration.

*Termination.* Mr. Cook contends that he had a valid teaching certificate on the first day of school because he had a substitute teaching certificate. The substitute certificate can be issued to teachers whose regular certificates have expired and it entitled Mr. Cook to act as a substitute during the absence of the regularly certificated staff member for a period not to exceed 30 consecutive days. WAC 180-79A-231(2)(a)(i).

RCW 28A.405.210 states that "[n]o teacher . . . shall be employed . . . unless he or she is the holder of an effective teacher's certificate or other certificate required by law or the state board of education *for the position for which the employee is employed.*" (Emphasis added.) Mr. Cook was to be employed as a regular full-time teacher, not a substitute teacher. Mr. Cook could not be employed by the school because he did not have a teaching certificate for the position for which he was hired on the first day of school.

Mr. Cook also argues that the District should not be allowed to terminate him when he had substantially complied with the renewal requirements. "Substantial compliance has been defined as actual compliance in respect to the substance essential to every reasonable objective of [a] statute." *In re Habeas Corpus of Santore*, 28 Wn. App. 319, 327, 623 P.2d 702 (1981) (citing *Stasher v. Harger-Haldeman*, 58 Cal. 2d 23, 29, 372 P.2d 649, 652, 22 Cal. Rptr. 657 (1962)). Mr. Cook cites an Alaska case in which the court held that a teacher whose teaching certificate had lapsed for two months had substantially complied with the certification renewal requirements so her employment and tenure were not terminated. *Nenana City Sch. Dist. v. Cog-*

*hill*, 898 P.2d 929 (Alaska 1995). Mr. Cook also points out that he was issued a teaching permit on August 25, three days before he received his termination notice.

It is true that Mr. Cook had substantially complied with the certification renewal requirements. There is no dispute that his continuing education credits were completed before the first day of school. But Mr. Cook technically did not meet the requirements of his contract because he had lost his teaching certificate and the District was entitled to terminate him. There is no Washington authority for the proposition that substantial compliance with teaching certificate renewal prevents termination. We conclude the trial court did not err by deciding that Mr. Cook breached his contract with the District.

*Estoppel.* Mr. Cook contends the District should be estopped from terminating him because it encouraged him to take the classes that made the renewal of his certificate untimely. The District received $10,000 in computer equipment because Mr. Cook took the Gates Foundation class. The District promised to provide equipment and technical support in connection with Mr. Cook's grant application to the Gates Foundation. The District received financial assistance from the state to allow Mr. Cook to take the driver's training course. And, Mr. Fendell encouraged Mr. Cook to take these classes. Mr. Cook claims that he relied on the District's conduct in allowing him to take the classes. He argues that the District acted inconsistently with its earlier conduct when it fired him for not having his teaching certificate on the first day of school.

■■ The use of equitable estoppel against the government is not favored. *Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993). "Consequently, a party asserting the doctrine against the government must demonstrate that equitable estoppel is necessary to prevent a manifest injustice, and that the exercise of government functions will not be impaired as a result of the estoppel." *In re Pers. Restraint of Peterson*, 99 Wn. App. 673, 680, 995 P.2d 83 (2000). The doctrine of equitable estoppel

is based on the principle that " 'a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon.' " *Kramarevcky*, 122 Wn.2d at 743 (quoting *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 81, 530 P.2d 298 (1975)). The elements of equitable estoppel are (1) an act or admission by one party that is inconsistent with a later assertion, (2) an act by another party in reliance upon the first party's act or admission, and (3) an injury that would result to the relying party if the first party were not estopped from repudiating the prior act or admission. *Kramarevcky*, 122 Wn.2d at 743.

The District did encourage and support Mr. Cook in his efforts to renew his certification. The District's efforts on Mr. Cook's behalf indicate how important it was to the District that Mr. Cook have his teaching certificate. However, the District never told Mr. Cook or implied to him that if he did not renew his certification, he would still have a job with the District. "[A] school district has no authority to hire a person for a certificated position unless that person holds the required certificate. The doctrine of equitable estoppel cannot operate to defeat that statutory requirement." *Johnson v. Cent. Valley Sch. Dist. No. 356*, 97 Wn.2d 419, 433, 645 P.2d 1088 (1982). As an experienced teacher, Mr. Cook knew or should have known that he was contractually and statutorily required to present a valid full-time teaching certificate by the first day of school. *McCormick v. Lake Wash. Sch. Dist.*, 99 Wn. App. 107, 118, 992 P.2d 511 (1999). The court did not err by not estopping the District from terminating Mr. Cook.

*Attorney Fees.* Mr. Cook requests attorney fees pursuant to RCW 49.48.030, which permits a party to recover attorney fees in any action where the party successfully recovers a judgment for lost wages. Mr. Cook has not done so and is therefore not entitled to an award of fees on appeal. *See Kohn v. Georgia-Pacific Corp.*, 69 Wn. App. 709, 727, 850 P.2d 517 (1993).

We affirm the judgment of the superior court.

SWEENEY and SCHULTHEIS, JJ., concur.

Review granted at 149 Wn.2d 1009 (2003).