[No. 73171-3. En Banc.]
Argued September 18, 2003. Decided December 18, 2003.

MOUNT ADAMS SCHOOL DISTRICT, *Respondent*, v. WILLIAM D. COOK, ET AL., *Petitioners*.

*Kevan T. Montoya* (of *Velikanje, Moore & Shore, P.S.*), for petitioners.

*Rockney L. Jackson* and *Kirk A. Ehlis* (of *Menke, Jackson, Beyer, Elofson, Ehlis & Harper, L.L.P.*), for respondent.

SANDERS, J. — Mount Adams School District (District) terminated William D. Cook for failing to renew his teaching certificate by the beginning of the 2000-01 school year. Cook filed a grievance seeking to arbitrate the merits of his termination. The District refused and sought a declaratory judgment that Cook's grievance was not subject to arbitration. The trial court granted the District's motion for summary judgment, concluding Cook could not compel the District to arbitrate his grievance. The Court of Appeals affirmed. We hold Cook's grievance is subject to arbitration. Accordingly, we reverse the Court of Appeals and remand to the trial court with directions to order the parties to arbitrate Cook's grievance.

## FACTS

Cook began teaching in the District as a full-time certificated alternative school teacher in 1998. Cook is a member of two unions for teachers employed by the District, the Mount Adams Education Association (MAEA) and the Washington Education Association (WEA). Clerk's Papers

(CP) at 112, 199-200. The District and the MAEA agreed to a collective bargaining agreement for the 1997 through 2000 school years.

The collective bargaining agreement provides: "If an employee is discharged or non-renewed and requests a hearing, then the District, the employee or the Association may elect to resolve the dispute through arbitration as opposed to the hearing process in RCW 28A.58.455." CP at 62. In addition, the agreement establishes a four-step procedure for determining the merits of a grievance brought through the MAEA, which also provides for arbitration. Article IX, section 1(C) of the collective bargaining agreement defines a "[g]*rievance*" as "an alleged violation, misinterpretation, or misapplication of the Collective Bargaining Agreement." *Id*. at 59. Article IX, section 2, step IV provides if the MAEA is not satisfied with the outcome of the first three steps in the grievance process, the grievance "may be submitted before an impartial arbitrator." *Id*. at 60. Article IX, section 4 provides in relevant part:

> Upon request of either party, the merits of a grievance and the *substantive and procedural arbitrability* issues arising in connection with that grievance may be consolidated for hearing before an arbitrator provided the arbitrator shall not resolve the question of arbitrability of a grievance prior to having heard the merits of the grievance.

*Id*. at 61 (emphasis added).

For a teacher to be covered by the collective bargaining agreement, he or she must be an "employee." *Id*. at 23. "*Employee*," as defined in article I, section 2(A)(f) of the collective bargaining agreement, "shall mean a member of the bargaining unit." *Id*. The "bargaining unit" is defined in article I, section 3 of the collective bargaining agreement as "[t]he regular full-time and regular part-time certificated personnel who hold valid contracts with the District." *Id*.

On May 15, 2000, Cook signed a "CERTIFICATED EMPLOYEE CONTRACT" governing employment "FOR THE 2000-01 SCHOOL YEAR AS DESIGNATED IN THE OFFI-

CIAL SCHOOL CALENDAR." *Id.* at 188. Cook's employment contract also provides:

THIS CONTRACT DOES NOT BECOME EFFECTIVE UNTIL SAID EMPLOYEE REGISTERS WITH THE DISTRICT SUPERINTENDENT'S OFFICE (1) A VALID TEACHING CERTIFICATE, (2) AN OFFICIAL TRANSCRIPT OF PREPARATION, (3) AN OFFICIAL VERIFICATION OF EXPERIENCE, AND (4) ANY OTHER REQUIRED CREDENTIAL.

*Id.* Cook satisfied this requirement on the day he signed his contract; however, by the date he was to report for work for the 2000-01 school year his compliance was questionable.

Cook's full-time teaching certificate expired on June 30, 2000. Cook needed 15 academic credits to obtain a renewal. Although Cook completed the coursework required to renew his teaching certificate, he was unable to obtain a renewal by August 23, 2000, the first day District teachers were required to report for work. Cook did, however, have a valid substitute teaching certificate. On August 24, 2000, Mary Hall, the district superintendent, sent Cook a letter dated August 23, 2000, notifying him that his failure to possess a valid full-time teaching certificate meant his employment contract was "invalid" and the District could not legally use his services. *Id.* at 194.

The MAEA filed a grievance on Cook's behalf with the District alleging the District violated article III, section 4 of the collective bargaining agreement by terminating Cook. Article III, section 4 governs due process rights of employees and provides in relevant part, "[n]o employee shall be disciplined without just and sufficient cause." *Id.* at 31. Cook's grievance proceeded through the first three steps in the collective bargaining agreement's grievance process. The District's board held a grievance appeal hearing and denied Cook's grievance, notifying him by a letter dated December 5, 2000, that "[p]ursuant to the collective bargaining agreement you have the right to request arbitration as the next step in this process." *Id.* at 111. An arbitration was scheduled for August 24, 2001, and an arbitrator was selected.

On April 3, 2001, the District filed a complaint in the Yakima County Superior Court seeking a declaratory judgment that either no contract was formed between Cook and the District or that such contract terminated by operation of law. The District also sought an injunction prohibiting Cook, the MAEA, and the WEA from attempting to enforce the contract through arbitration. The court granted the District's motion for summary judgment finding Cook's employment contract was invalidated by operation of law as of August 23, 2000, because he did not have a valid full-time teaching certificate on the first day District teachers were required to report for work. The court also issued an injunction prohibiting Cook, the MAEA, and the WEA from commencing or continuing arbitration of Cook's grievance. The court denied Cook's subsequent motion for reconsideration.

The Court of Appeals affirmed the trial court, holding Cook's grievance was not subject to arbitration and Cook was not wrongfully terminated. *Mount Adams Sch. Dist. v. Cook*, 113 Wn. App. 472, 54 P.3d 1213 (2002). We granted review. 149 Wn.2d 1009, 69 P.3d 874 (2003).

## STANDARD OF REVIEW

When reviewing a grant of summary judgment we engage in the same inquiry as the trial court. *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 639, 9 P.3d 787 (2000). We may affirm an order granting summary judgment only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980). "All facts and reasonable inferences are considered in the light most favorable to the nonmoving party, and all questions of law are reviewed de novo." *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994) (citations omitted).

## ANALYSIS

Cook claims the trial court erred by asserting jurisdiction to determine the arbitrability of his grievance with the District. Suppl. Br. of Pet'r at 3. Cook maintains the question of whether his grievance is subject to arbitration is for an arbitrator to decide, not the courts, as the collective bargaining agreement between the MAEA and the District provides that an arbitrator shall decide issues of substantive arbitrability after hearing the merits of the grievance. *Id.* at 6. The District, on the other hand, asserts Cook's grievance is not subject to arbitration because Cook was not a member of the bargaining unit when the District terminated him; therefore, the District argues, Cook cannot compel the District to arbitrate his grievance. Br. of Resp't at 8-9; Resp't's Answer to Pet. for Review at 9.

The principles governing arbitration of public sector labor disputes arising under a collective bargaining agreement are set forth by the United States Supreme Court in the "Steelworkers Trilogy."[1] *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Employees*, 130 Wn.2d 401, 413, 924 P.2d 13 (1996); *Gen. Teamsters Local No. 231 v. Whatcom County*, 38 Wn. App. 715, 716, 687 P.2d 1154 (1984). In Washington those principles are framed as follows:

> "(1) Although it is the court's duty to determine whether the parties have agreed to arbitrate a particular dispute, the court cannot decide the merits of the controversy, but may determine only whether the grievant has made a claim which *on its face* is governed by the contract. (2) An order to arbitrate should not be denied unless it may be said with positive assurance the arbitration clause is not susceptible of *an* interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. (3) There is a strong presumption in favor of arbitrability; all questions upon which the parties disagree are presumed to be within the arbitration provisions unless negated expressly or by clear implication."

---

[1] *See United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960).

*Peninsula Sch. Dist.*, 130 Wn.2d at 413-14 (quoting *Council of County & City Employees v. Spokane County*, 32 Wn. App. 422, 424-25, 647 P.2d 1058 (1982)). Thus, "[a]part from matters that the parties specifically exclude, all of the questions on which the parties disagree must . . . come within the scope of the grievance and arbitration provisions of the collective [bargaining] agreement." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); *Peninsula Sch. Dist.*, 130 Wn.2d at 414.

 The general rule that courts must decide the question of whether the parties agreed to arbitrate does not apply, however, where the parties "clearly and unmistakably provide otherwise." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). The parties to a contract containing an arbitration clause may agree that an arbitrator shall decide the question of whether they agreed to arbitrate a dispute. *Bhd. of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co.*, 832 F.2d 507, 510 (9th Cir. 1987) (citing *AT&T Techs.*, 475 U.S. at 649). Where a party to a collective bargaining agreement claims the parties have agreed to allow an arbitrator to decide the issue of substantive arbitrability, the proper judicial inquiry is whether the parties have agreed that an arbitrator should decide that question. *Bhd. of Teamsters*, 832 F.2d at 510. When the parties agree by contract to vest an arbitrator with authority to interpret the parties' original intent, the parties are bound by their consent to have the arbitrator fashion an appropriate remedy. *Clark County Pub. Util. Dist. No. 1 v. Int'l Bhd. of Elec. Workers*, 150 Wn.2d 237, 248-49, 76 P.3d 248 (2003).

 Here the MAEA and the District have clearly and unmistakably agreed to allow an arbitrator to decide whether a grievance is arbitrable. The language of article IX, section 4 of the collective bargaining agreement could not be clearer when it provided, "the merits of a grievance

and the substantive and procedural arbitrability issues arising in connection with that grievance may be consolidated for hearing before an arbitrator." CP at 61. The agreement requires that the arbitrator, however, "shall not resolve the question of arbitrability of a grievance prior to having heard the merits of the grievance." *Id.* Therefore the collective bargaining agreement makes clear the MAEA and the District have agreed that "the question of arbitrability of a grievance" is for an arbitrator to decide. *Id.*

■ The collective bargaining agreement defines a grievance as "an alleged violation, misinterpretation, or misapplication of the Collective Bargaining Agreement." *Id.* at 59. The grievance the MAEA brought on Cook's behalf alleges the District violated article III, section 4 of the collective bargaining agreement by terminating Cook without sufficient due process. Cook was a member of the MAEA at all times relevant to this dispute. Nothing more is needed to establish the arbitrability of Cook's grievance.[2]

■ In addition, it cannot be said with positive assurance the collective bargaining agreement's arbitration clause is not susceptible to an interpretation that covers Cook's grievance. The broad language of the arbitration clause and the clause reserving the question of arbitrability for an arbitrator to decide encompasses Cook's grievance. Indeed, the District's own actions indicate the arbitrability of Cook's grievance is not positively precluded by the collective bargaining agreement. After processing Cook's grievance through the first three steps in the grievance process, the District notified Cook by letter that he had the right to

---

[2] Where, as here, a collective bargaining agreement explicitly vests an arbitrator with authority to resolve issues of substantive and procedural arbitrability, the threshold inquiry of arbitrability must ultimately be submitted to an arbitrator to decide. *See AT&T Techs.*, 475 U.S. at 649. If the arbitrator determines the dispute is not subject to arbitration, the arbitrator's job is finished. If the arbitrator decides the dispute is subject to arbitration, then the merits of the dispute shall be arbitrated. But here the collective bargaining agreement provides an arbitrator with the authority to resolve issues of substantive and procedural arbitrability only after hearing the merits of the grievance. As such, this dispute must be submitted to arbitration, notwithstanding the fact that the arbitrator may decide Cook's grievance is not subject to arbitration after hearing the merits.

request arbitration as the next step in the grievance process. Subsequently, Cook's dispute was scheduled for arbitration and an arbitrator was selected. Therefore because it cannot be said with positive assurance that the collective bargaining agreement precludes Cook's grievance, the District must submit to arbitration.

■ It is at least arguably true, as the District contends, Cook was not a member of the bargaining unit when the District terminated him, and thus Cook cannot receive a remedy under the collective bargaining agreement. Br. of Resp't at 9; Resp't's Answer to Pet. for Review at 9. That determination, however, is an issue for substantive arbitration requiring an interpretation of the collective bargaining agreement in conjunction with Cook's employment contract because the collective bargaining agreement unambiguously reserves issues of substantive arbitrability for an arbitrator to decide. Similarly, it is also possible, as the District argues, that Cook was properly terminated for failing to possess the correct teaching certificate on the first day of school. *See* Br. of Resp't at 15. That is a question of the merit of Cook's grievance, and the merit of a grievance brought under the collective bargaining agreement is also for an arbitrator to decide. But this is not a question of contract "invalidity" as the District would argue, but rather perhaps a question of failure to satisfy a condition subsequent.

Therefore because both parties clearly and unmistakably agreed that an arbitrator decide whether a grievance is arbitrable, and because the MAEA filed a grievance on Cook's behalf alleging a violation of the collective bargaining agreement, we conclude an arbitrator should resolve the question of arbitrability of Cook's grievance after having heard its merits.

■ Cook requests reasonable attorney fees under RCW 49.48.030, which permits a party who successfully recovers judgment for wages or salary to that relief. But Cook has yet to obtain a judgment for lost wages. *See Hitter v. Bellevue Sch. Dist. No. 405*, 66 Wn. App. 391, 832 P.2d 130

(1992). Consequently his request for attorney fees is premature. *Accord Brundridge v. Fluor Fed. Servs., Inc.,* 109 Wn. App. 347, 361, 35 P.3d 389 (2001) (pipe fitters' request for attorney fees arising from their wrongful termination claim was premature where pipe fitters had not yet obtained judgment for lost wages), *review denied,* 146 Wn.2d 1022, 52 P.3d 520 (2002), *cert. denied,* 538 U.S. 906 (2003).

## CONCLUSION

We reverse the Court of Appeals and remand to the trial court with directions to order the parties to arbitrate Cook's grievance. Cook's request for attorney fees is denied, but Cook is awarded his costs on appeal. RAP 14.2.

ALEXANDER, C.J., and JOHNSON, IRELAND, CHAMBERS, and OWENS, JJ., concur.

BRIDGE, J. (dissenting) — Whether an arbitration clause is applicable in a particular case depends first on whether the claim is governed by the contract containing the arbitration clause. On its face, the collective bargaining agreement (CBA) between the Mount Adams Education Association (MAEA) and the Mount Adams School District (District) does not apply to a noncertificated teacher without a valid contract. When Cook failed to present a valid full-time teacher's certificate on the first day of the 2000-01 contract year, as required by RCW 28A.405.210, his contract with the District became void by operation of law. As a non-certificated teacher without a valid contract, Cook could not enjoy the benefit of the CBA, including its arbitration clause, for the purposes of this claim. Because I believe the majority overlooks this threshold analysis, I respectfully dissent.

The duty to arbitrate is created entirely by contract; parties cannot be required to submit to arbitration to which they have not agreed. *AT&T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). The court's duty is to determine " 'whether

the parties have agreed to arbitrate a particular dispute.' " *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Employees*, 130 Wn.2d 401, 413, 924 P.2d 13 (1996) (quoting *Council of County & City Employees v. Spokane County*, 32 Wn. App. 422, 424-25, 647 P.2d 1058, *review denied*, 98 Wn.2d 1002 (1982)). I agree with the majority that there is a strong presumption in favor of arbitrability and " '[a]n order to arbitrate should not be denied unless it may be said with positive assurance the arbitration clause is not susceptible of *an* interpretation that covers the asserted dispute.' " *Id.* at 413-14; majority at 723. If the CBA applied to Cook's claim, its arbitration clause would likely govern.

Yet, the existence of an arbitration clause in the CBA, even an expansive one, does not excuse the court from answering the threshold question of whether the CBA is applicable to Cook's claim in the first place. While the court may not decide the merits of the controversy, we can and must determine whether, on its face, Cook's claim is governed by the contract containing the arbitration clause. *Peninsula Sch. Dist.*, 130 Wn.2d at 413. The majority mistakenly asserts that nothing more is needed to establish the arbitrability of Cook's grievance than Cook's membership in the MAEA. Majority at 725. However, this conclusion directly contradicts the plain terms of the CBA.[3]

For Cook's claim or grievance to be covered by the CBA he must be an "employee." Clerk's Papers (CP) at 59; majority at 720. An employee is defined in the CBA as "a member of the bargaining unit." CP at 23. Article I, section 3A of the agreement defines the bargaining unit as "[t]he regular full-time and regular part-time certificated personnel who hold valid contracts with the District." *Id.* Therefore, to determine whether Cook may enjoy the benefits of the CBA's arbitration clause, the court must first determine if Cook was a certificated teacher with a valid individual

---

[3] Even though the CBA explicitly calls for an arbitrator to resolve the issues of substantive and procedural arbitrability, majority at 725 n.2, Cook does not enjoy the benefit of this provision if the CBA does not apply to his claim in the first place.

contract with the school district. Otherwise, by its express terms the CBA does not apply to his claim.

Cook's individual contract with the District for the 2000-01 school year was signed on May 15, 2000, shortly before Cook's teacher's certificate expired in June 2000. CP at 147, 194. The contract states:

> THIS CONTRACT DOES NOT BECOME EFFECTIVE UNTIL SAID EMPLOYEE REGISTERS WITH THE DISTRICT SUPERINTENDENT'S OFFICE (1) A VALID TEACHING CERTIFICATE, . . . .

*Id.* at 147. This language seems to indicate that submission of a teacher's certificate, valid for the 2000-01 contract year, is a condition precedent to the effectiveness of the 2000-01 teacher contract. *See Walter Implement, Inc. v. Focht*, 107 Wn.2d 553, 556-57, 730 P.2d 1340 (1987) ("A condition precedent is an event occurring subsequent to the making of a valid contract which must exist or occur before there is a right to immediate performance."); *see also* JOHN D. CALAMARI & JOSEPH M. PERILLO, THE LAW OF CONTRACTS § 11.5, at 398 (4th ed. 1998) (defining condition precedent as "an act or event, other than the lapse of time, which must exist or occur before a duty to perform a promise arises."). Even so, the majority states that Cook's soon-to-expire teacher's certificate satisfied this condition on the day he signed his contract. Majority at 721. However, the teacher's certificate that expired in June 2000 was irrelevant to Cook's ability to teach during the 2000-01 contract year. *See Johnson v. Cent. Valley Sch. Dist. No. 356*, 97 Wn.2d 419, 430-32, 645 P.2d 1088 (1982); *see also Kimball v. Sch. Dist. No. 122*, 23 Wash. 520, 528, 63 P. 213 (1900) (recognizing that the relevant teacher's certificate is the one that covers the school year contracted for). Therefore, Cook appears to have failed to satisfy the condition precedent necessary to make his individual contract effective.

Even if the majority correctly concluded either that Cook's individual contract did not contain a condition precedent or that the condition was satisfied, the contract

became void by operation of law when he was unable to present a valid full-time teacher's certificate on the first day of his 2000-01 contract year. In Washington, the hiring of certificated employees is governed by statute. *See* RCW 28A.405.210; *see also* RCW 28A.410.025. In considering questions of arbitrability, the court may consider applicable statutory requirements. *See Peninsula Sch. Dist.*, 130 Wn.2d at 405, 413 (addressing whether a collective bargaining agreement complied with statutes before determining arbitrability).

Under Washington statutes, failure to possess a valid teacher's certificate renders an individual's employment contract with a school district void. RCW 28A.405.210 provides:

> No teacher . . . shall be employed . . . unless he or she is the holder of an effective[4] teacher's certificate or other certificate required by law or the state board of education for the position *for which the employee is employed.*

(Emphasis added.) The statute further indicates that employee contracts must be "in conformity with the laws of this state" and "[a]ny contract signed in violation of this provision shall be void." *Id.* Accordingly, I would hold that RCW 28A.405.210 renders a teacher's contract void where the teacher fails to present a valid teacher's certificate on the day he or she must report for duty for that contract year. *See Johnson*, 97 Wn.2d at 433 ("[A] school district has no authority to hire a person for a certificated position unless that person holds the required certificate."); *see also Kester v. Sch. Dist. No. 34*, 48 Wash. 486, 488, 93 P. 907 (1908) (valid certificate was a condition precedent for employment); *Kimball*, 23 Wash. at 527 (a temporary teacher's certificate did not satisfy the licensing requirement for the full term of the contract).

---

[4] RCW 28A.410.025 clarifies:

No person shall be accounted as a qualified teacher within the meaning of the school law who is not the holder of a valid teacher's certificate or permit issued by lawful authority of this state.

On August 23, 2000, the first day of his contract year with the District, Cook did not have a valid teacher's certificate[5] for the position of full-time teacher, the position for which he was hired. CP at 194. At that point, the District could not legally employ his services,[6] and Cook's contract became invalid by operation of law. *See* RCW 28A.405.210. Since Cook did not have a valid contract with the District or valid certification, he was not covered by the CBA between the MAEA and the District. By the CBA's own terms, Cook was not eligible to enjoy the benefits of the CBA, including its arbitration clause. Cook therefore fails the threshold test, namely whether the CBA's arbitration clause is applicable to his case.

The majority concedes that Cook may not have been a member of the bargaining unit, but defers to the arbitrator to make that determination. Majority at 726. I agree that the arbitrator has the authority to interpret the CBA. However, it is for the court to determine whether Washington's certification statutes invalidated Cook's individual employment contract, rendering the CBA facially inapplicable to Cook's claim. *See Peninsula Sch. Dist.*, 130 Wn.2d at 413-14.

Although this result seems regrettable since Cook presented a valid *temporary* certificate on August 29, 2000, the relevant statutes are clear. When Cook failed to satisfy the statutory certification requirements on August 23, 2000, the District could not legally employ Cook under the existing contract. CP at 194; RCW 28A.405.210. At most, the District could have rehired Cook under a new contract after he presented a valid certificate.[7]

---

[5] Cook did have a valid substitute teacher's certificate. However, it was not valid for the position for which he was employed as required by RCW 28A.405.210.

[6] Article II, section 3C of the CBA likewise prohibits the District from assigning classroom work to noncertificated personnel. CP at 31.

[7] In 2001, the legislature amended the statutes to allow a holder of a lapsed certificate to work on a conditional basis. Laws of 2001, ch. 263, § 1; RCW 28A.410.010. The 2001 amendment was not in effect at the time that the District declared Cook's individual contract to be invalid. CP at 194. Moreover, the statute refers only to the *reemployment* of teachers with lapsed certificates. Because

In sum, because Cook was not certificated and did not have a valid contract with the District, the CBA does not apply to his claim. I would affirm the Court of Appeals and uphold the injunction prohibiting Cook, the MAEA, and the Washington Education Association from commencing or continuing arbitration. Although the majority does not reach the questions, I would also affirm the remaining Court of Appeals conclusions that neither substantial compliance nor equitable estoppel defeated the statutory certification requirement.

MADSEN and FAIRHURST, JJ., concur with BRIDGE, J.

[No. 72975-1. En Banc.]
Argued June 24, 2003. Decided January 15, 2004.

Cook's employment had not lapsed, this reemployment provision presumably would not assist his claim.