202 P.3d 1024 (2009)
HIGHLAND SCHOOL DISTRICT NO. 203, Appellant,
v.
Scott RACY; Darryl Hartung; Highland Education Association; and Washington Education Association, Respondents and Cross-Appellants.
Nos. 27015-7-III, 27252-4-III.
Court of Appeals of Washington, Division 3.
March 17, 2009.
*1025 Kirk A. Ehlis, Menke Jackson Beye Ehlis & Harper LLP, Yakima, WA, for Appellant.
Kevan Tino Montoya, Velikanje Halverson PC, Yakima, WA, for Respondents and Cross-Appellants.
KORSMO, J.
¶ 1 The trial court imposed sanctions for frivolous litigation against the Highland *1026 School District No. 203 (District) after it sought to enjoin the Highland Education Association (Union) from arbitrating discipline against two of its members, contrary to earlier Washington Supreme Court precedent. The District appeals from the sanction order. The Union cross-appeals the amount of attorney fees it was awarded, arguing that the trial court was required to use the lodestar approach. We conclude that the trial judge did not abuse his considerable discretion in either context and affirm the rulings below.

BACKGROUND
¶ 2 The District declined to renew the coaching contracts of two teachers, citing unrelated instances of classroom misconduct. The Union filed grievances and sought arbitration of the actions because other discipline against the two teachers had previously been imposed under the parties' labor agreement. The District filed an action in the Yakima County Superior Court, seeking to enjoin the arbitration process.
¶ 3 The Union moved to dismiss the injunction action, citing to the decision in Mount Adams School District v. Cook.[1] The trial court agreed that Mount Adams precluded trial court intervention to decide the issue of arbitrability under the Collective Bargaining Agreement (CBA). The injunction action was therefore dismissed. The Union also sought sanctions, arguing that the action was frivolous in light of the Mount Adams case. The trial court awarded the Union $18,000 in attorney fees under RCW 4.84.185, although the Union sought $30,043.50. The court ordered reimbursement for the Union's actual expenses rather than an award based on the lodestar method.
¶ 4 The District prevailed at arbitration, with the arbitrator ruling that issues relating to coaching contracts were not protected by the CBA. The District then sought reconsideration of the sanction ruling. The trial court denied reconsideration and ordered an additional $705 in attorney fees. The District then appealed the sanction ruling to this court. The Union cross-appealed the amount of sanctions awarded.

ANALYSIS

Sanction Ruling
¶ 5 The District contends that the trial court erred in finding the litigation frivolous under RCW 4.84.185, particularly in light of the fact that it ultimately prevailed at arbitration on the basis that the coaching contract grievances were not subject to arbitration. It argues that the trial court did not find that it acted in bad faith or brought suit for purposes of delay or harassment. The fact the District ultimately prevailed at arbitration does not mean that its initial decision to sue had merit. Similarly, the statute does not require findings of bad motivation before a court determines that a suit is frivolous.
¶ 6 The first sentence of the statute provides:
In any civil action, the court having jurisdiction may, upon written findings by the judge that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense.
RCW 4.84.185.
¶ 7 By its express terms, the court may impose sanctions for any action that is "frivolous and advanced without reasonable cause." Id. Nothing in the statute requires a court to find that the action was brought in bad faith or for purposes of delay or harassment. While the District properly notes that the legislative history contains comments that the statute would deter vexatious litigation, the Legislature did not limit the reach of the statute to actions or claims brought to harass or delay. Thus, the appellant's arguments that the trial court failed to find that it acted in bad faith or for improper purposes simply have no weight.
¶ 8 The parties disagree on the standard of review, with the District arguing that construction of the statute requires de novo *1027 review, while the Union contends the sanction decision is reviewed for abuse of discretion. We agree with the Union. The Washington Supreme Court unequivocally has stated:
... this court has held that an award of attorney fees that is authorized by statute is left to the trial court's discretion and will not be disturbed "in the absence of a clear showing of abuse of discretion." ... This standard of review is appropriate for decisions under RCW 4.84.185.
Fluke Capital & Mgmt. Servs. Co. v. Richmond, 106 Wash.2d 614, 625, 724 P.2d 356 (1986) (citations omitted).
¶ 9 Discretion is abused when it is exercised on untenable grounds or for untenable reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971). The trial court concluded that the injunction litigation was precluded by Mount Adams School District v. Cook, 150 Wash.2d 716, 81 P.3d 111 (2003). We agree.
¶ 10 Mount Adams also involved an action between a school district and its teachers' union.[2] There the school district declined to let Mr. Cook teach because his teaching certificate had not been renewed by the time school started. He filed a grievance and sought arbitration. The school district, as in this case, sought an injunction from the Yakima County Superior Court. Id. at 719, 721-722, 81 P.3d 111. The trial court granted the injunction and this court affirmed that decision. Id. at 722, 81 P.3d 111. The Washington Supreme Court, in a 6-3 decision, reversed and ordered the matter arbitrated. Id. at 727, 81 P.3d 111.
¶ 11 The majority noted that Washington, consistent with federal law, strongly favors arbitration of labor disputes and will defer issues to arbitration unless a matter was clearly excluded from arbitration. Id. at 723-724, 81 P.3d 111. The majority then reasoned that the collective bargaining agreement in place in Mount Adams squarely left the issue of whether or not a claim was subject to arbitration to the arbitrator. The provisions in question stated that merits of an arbitration hearing and any related procedural issues may be consolidated, but the arbitrator could not decide the procedural issues without first hearing the merits of the case. The court concluded that the provisions clearly left the issue of arbitrability to the arbitrator. Id. at 724-725, 81 P.3d 111. The court then reversed the injunction and remanded for arbitration, with the arbitrator to decide if the grievance was subject to arbitration. Id. at 725-727, 81 P.3d 111. In dissent, Justice Bridge wrote that the threshold question of whether or not the grievance was subject to arbitration was a matter for a court to decide. Since Mr. Cook was not covered by the labor agreement due to his failure to have a valid teaching certificate at the time the agreement took effect, he was not covered and the arbitration clause was inapplicable. Id. at 727-732, 81 P.3d 111.
¶ 12 There is no dispute[3] between the parties that the arbitration provisions of the CBA at issue here are the same as those involved in Mount Adams.[4] The District here largely reargues the position adopted by Justice Bridge in dissent, contending that the CBA did not apply to coaching contracts, so the arbitration provision was not validly invoked by the Union and a court could enjoin the process. In light of the holding in Mount Adams, however, that is not a tenable argument. The parties here agreed, as in Mount Adams, to leave the issue of whether a matter is subject to arbitration to the arbitrator. It was therefore frivolous to file an action that ultimately raised the same issue (even if the context was slightly different) as that decided in Mount Adams. The question presented here was the same as presented therewho decides whether a grievance is subject to arbitration? The Mount Adams court resolved that specific issue. The District ignored the holding of that case and *1028 proceeded with its lawsuit. The trial court certainly had a tenable basis for concluding that the action was frivolous in light of that authority.
¶ 13 The District is understandably concerned that it had to go through the expense and time of arbitrating the grievance on its merits when it had a successful procedural bar to the action. The problem, however, is that is what the District and the Union agreed to do when they crafted the language of the arbitration provision. If experience is now proving that to be a bad idea, the remedy is to reconsider the scope of the arbiter's authority in the next CBA. The parties could agree to have the arbitrator first resolve procedural issues instead of addressing the merits (saving both sides time and money in some instances), or the parties could even agree to have courts first determine the scope of arbitration. What the parties have done here with the current CBA, however, is exactly what the parties did in the Mount Adams agreement. The result here must be the same as there.
¶ 14 The trial court correctly determined that Mount Adams left this action to the initial consideration of the arbitrator. Therefore, the trial court's determination that the action was frivolous was based on a very tenable reason. It was not an abuse of discretion.

Amount of Sanction
¶ 15 The Union cross-appeals the court's decision to order sanctions in the amount the litigation cost the Union rather than applying a lodestar analysis and imposing a higher amount. We find no authority for the proposition that the trial court had to use a lodestar analysis under RCW 4.84.185. The amount and methodology for imposing sanctions was left to the trial court. We find no abuse of discretion in the decision to reimburse for actual costs rather than a higher figure.
¶ 16 The Union and its counsel had a written agreement to bill the work on this case at $140 per hour. The trial court used that figure in its sanction award, reasoning that reimbursing the Union its actual expenses was appropriate. The Union had argued that its attorneys usually charged others a higher figure and that it was appropriate to apply that higher sum under a lodestar analysis.
¶ 17 The lodestar approach was first discussed by the Washington Supreme Court in detail in Bowers v. Transamerica Title Insurance Company, 100 Wash.2d 581, 593-601, 675 P.2d 193 (1983). There a plurality of the court adopted the concept when deciding how to compute a reasonable attorney fee award under the Consumer Protection Act, chapter 19.86 RCW. The lead opinion reviewed extensive authorities from the federal courts and determined that it was appropriate in that case for the court tasked with awarding reasonable attorney fees to come up with a lodestar figure by multiplying a reasonable hourly rate for the work involved by the amount of time the attorneys reasonably worked on the case. Id. at 597, 675 P.2d 193. The figure could then be adjusted up or down based on various factors, including the risk involved in a contingency case, and, in a very rare case, the quality of the work performed. Id. at 597, 599, 675 P.2d 193.
¶ 18 Bowers subsequently was adopted by our court and the lodestar analysis was used in numerous cases to determine reasonable attorney fees under various special statutes. E.g., Mahler v. Szucs, 135 Wash.2d 398, 957 P.2d 632 (1998) (Mandatory Arbitration Rules); Boeing Co. v. Sierracin Corp., 108 Wash.2d 38, 738 P.2d 665 (1987) (Trade Secrets Act, chapter 19.108 RCW); Blair v. Wash. State Univ., 108 Wash.2d 558, 740 P.2d 1379 (1987) (Washington Law Against Discrimination, chapter 49.60 RCW). In his concurring opinion in Brand v. Department of Labor & Industries, 139 Wash.2d 659, 989 P.2d 1111 (1999), Justice Talmadge referred to the lodestar approach as "the default principle" for calculating attorney fees in Washington. Id. at 676, 989 P.2d 1111. However, no Washington case has expressly applied the lodestar analysis to an attorney fees award under RCW 4.84.185, although this court upheld an award under the statute using the lodestar methodology in Zink v. City of Mesa, 137 Wash.App. 271, 152 P.3d *1029 1044 (2007), review denied, 162 Wash.2d 1014, 178 P.3d 1033 (2008).
¶ 19 In awarding reasonable attorney fees, a trial court should have an objective basis for the award. Bowers, 100 Wash.2d at 599, 675 P.2d 193. In addition, a trial court must sufficiently explain the basis for its fee award to permit appellate review and enter findings in support of the decision. Mahler, 135 Wash.2d at 435, 957 P.2d 632.
¶ 20 In the absence of mandatory authority requiring application of the lodestar methodology, we do not believe the trial court abused its discretion by not following that formula.[5] Additionally, RCW 4.84.185 speaks in terms of payment for "the reasonable expenses, including fees of attorneys, incurred" in the defense of the frivolous claim or action. (Emphasis added.) Attorney fee awards under cost-shifting statutes should include consideration of the purpose of the statute. Brand, 139 Wash.2d at 667, 989 P.2d 1111. The purpose of RCW 4.84.185 is to compensate those parties forced to defend against a frivolous claim or defense. An award of attorney fees beyond the amount actually incurred is not appropriate under this statute. Accordingly, we believe the trial judge correctly considered the rate actually charged the Union by its counsel as the reasonable rate rather than some higher sum that a different client might have had to pay. Whether a fee is reasonable is not dependent upon whether the client or the opposing party is the one paying it. Scott Fetzer Co. v. Weeks, 122 Wash.2d 141, 156, 859 P.2d 1210 (1993).
¶ 21 The essence of the lodestar methodology is the initial formula: a reasonable hourly rate for a reasonable number of hours worked. A trial judge who strays from this formula will typically have a difficult time establishing that an award of attorney fees is actually reasonable. Here, the trial judge essentially followed this approach even though he did not articulate that the "lodestar" methodology was being used. The second aspect of a lodestar analysis is whether any adjustment should be made to the lodestar figure. The trial judge did not consider this aspect and we do not fault that decision. A truly frivolous case simply will not present issues of complexity or require particularly skillful performance from counsel beyond that included in the reasonable hourly rate. When a case is being defended by counsel being paid an hourly rate, as here, the risk factor of a contingency fee is simply not at issue, so that adjustment also is not appropriate. Thus, even if a lodestar analysis had been required in this case, the result would not vary from the trial court's determination.
¶ 22 The trial court had discretion under RCW 4.84.185 both to impose sanctions for frivolous litigation and to determine the amount of reasonable attorney fees. Fluke, 106 Wash.2d at 625, 724 P.2d 356; Zink, 137 Wash.App. at 277, 152 P.3d 1044. The court also properly limited the amount of the award to the fees actually incurred by the Union. The determination of a reasonable fee was certainly based on tenable grounds. Thus, we conclude there was no abuse of trial court discretion in the amount of fees awarded.
¶ 23 In light of the failure of both the appeal and the cross-appeal, there is no substantially prevailing party in this action and no costs will be awarded on appeal. RAP 14.4. We likewise decline to order attorney fees for this appeal under RAP 18.1 or 18.9(a). The District challenged only the sanction ruling, not the decision to dismiss the injunction lawsuit. While we have rejected that appeal, it was not a frivolous one. Additional attorney fees are not in order. Zink, 137 Wash.App. at 279, 152 P.3d 1044.
¶ 24 The judgment of the trial court is affirmed.
WE CONCUR: SWEENEY and BROWN, JJ.
NOTES
[1] 150 Wash.2d 716, 81 P.3d 111 (2003).
[2] Counsel for the parties in this appeal were also counsel for the parties in Mount Adams, a case that also arose in Yakima County.
[3] Neither party assigns error to any of the trial court's factual findings concerning the nature of the collective bargaining agreement or the attorney fees award.
[4] A provision in this CBA declares: "The arbitrator shall decide all substantive and procedural arbitrability issues." Clerk's Papers at 371.
[5] A trial court is not mandated to follow the lodestar approach in all cases involving reasonable attorney fee awards. Instead, the award "should be guided" by the lodestar analysis. Mahler, 135 Wash.2d at 433, 957 P.2d 632.