[No. 2752-2.   Division Two.   June 15, 1978.]

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS
UNION LOCAL 483, *Appellant,* v. THE CITY
OF TACOMA, *Respondent.*

*David B. Condon* and *Welch & Condon,* for appellant.

*Robert R. Hamilton, Paul J. Nolan,* and *Thomas Dempsey,* for respondent.

PEARSON, C.J.—The International Brotherhood of Electrical Workers, Local 483 (Union) appeals from a summary judgment in favor of the City of Tacoma (City), ruling that a labor dispute between the City and the Union was not subject to arbitration.

The union represents workers in the City of Tacoma Department of Public Utilities, Light Division. For a number of years, two day–shift load dispatchers were paid at 128 percent of the rate paid to journeymen–linemen. On all other shifts one load dispatcher was paid at the 128 percent rate, and one was paid at a 113.5 percent rate. On May 16,

1974, the City notified the Union that as of May 27, 1974, one day–shift load dispatcher's wages would be reduced to 113.5 percent. The Union responded by filing a formal grievance. The City contended that the dispute was not a grievance as defined in the parties' labor agreement, and was not subject to the grievance procedure. The dispute eventually reached the arbitration stage, with the City still arguing that the matter was not a grievance and consequently not subject to arbitration. When the City raised the issue of arbitrability before the arbitrator, he declined to decide whether or not the dispute was a grievance. The Union sought a declaratory judgment in superior court to resolve the matter. The trial court granted the City's motion for summary judgment, and denied the Union's motion.

The sole issue is whether this dispute is arbitrable under the labor agreement in effect at the time the dispute arose. That agreement provides that grievances which are not resolved at prior stages of the grievance procedure must be referred to binding arbitration. The crux of the problem is the parties' differing interpretations of the term "grievance." Section 5.2 of the labor agreement defines "grievance" as follows:

An alleged violation of the terms of this Agreement submitted to the Department in writing within thirty (30) days of the alleged violation.

Section 2.1 of the agreement states that the Union "shall be the exclusive bargaining agent in all matters of *wages*, hours, and employment conditions in the application of this Agreement . . ." (Italics ours.) Furthermore, article 18 of the agreement sets out in great detail the wage scales to be applied to numerous positions. In view of these provisions in the contract, it is impossible to reach any conclusion other than the one urged by the Union—this dispute relates to wages, which are contained in the agreement, and the matter is a grievance subject to arbitration.

The City argues that the management rights clause exempts this dispute from arbitration. That clause reserves

to the Department all powers or authority which are not specifically abridged, delegated, or modified by the agreement. The City's argument is that a new position of power scheduler had been created in 1970 and by 1974 the power scheduler was performing duties which had previously been performed by the second day–shift load dispatcher. By reducing the wage rate of the second load dispatcher, the City argues that it was actually complying with section 18.3(i) of the agreement, which requires that when one load dispatcher is under the supervision of another dispatcher, the first dispatcher shall be paid at the lower wage scale. The City argues that it was merely exercising its management prerogative to reorganize. In support, the City cites Foster Transformer Co. & Dist. 34 Int'l Ass'n of Machinists, 212 N.L.R.B. Dec. 130, 87 L.R.R.M. 1010 (1974). The issue in that case, however, was not whether the matter was arbitrable; rather, the question was whether or not the company was entitled to reclassify an improperly classified employee. Although that is the ultimate issue in this case, that is a question for the arbitrator to decide. The City, in effect, is asking the court to decide the merits of the dispute. This we decline to do.

In determining whether a dispute is arbitrable under a labor contract, courts should exercise great caution and restraint to avoid usurping the role of the arbitrator by going beyond the question of arbitrability and becoming involved in the merits of the dispute. *Hanford Guards Local 21 v. General Elec. Co.*, 57 Wn.2d 491, 358 P.2d 307 (1961). Where a provision of a collective bargaining agreement is subject to two interpretations, the one which would require arbitration should be adopted. *Jennings v. Westinghouse Elec. Corp.*, 283 F. Supp. 308 (S.D.N.Y. 1968). On nearly identical facts, the parties in *Union Employers Div. of Printing Indus. v. Columbia Typo. Union 101*, 353 F. Supp. 1348 (D.D.C. 1973), agreed that the matter was arbitrable. In view of the above considerations, all doubts should be resolved in favor of arbitrability.

438

The orders granting summary judgment for the City and denying summary judgment for the Union are reversed and remanded for entry of judgment that the dispute is subject to arbitration.

PETRIE and REED, JJ., concur.