[No. 11735–1–I.   Division One.   September 24, 1984.]

GENERAL TEAMSTERS LOCAL NO. 231, *Appellant,* v.
WHATCOM COUNTY, *Respondent.*

*Davies, Roberts, Reid, Anderson & Wacker, William H. Song,* and *Russell J. Reid,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Gene R. Moses, Chief Civil Deputy,* for respondent.

RINGOLD, J.—General Teamsters Local 231 (Union) appeals from a summary judgment in favor of Whatcom County, ruling that a labor dispute between the County and the Union is not subject to arbitration under a collective bargaining agreement. We reverse.

On July 22, 1981, after 2 years of negotiations, the Union and the County entered into a collective bargaining agreement, incorporating a comprehensive classification plan evaluating and ranking the jobs of County employees. Darlene Anderson, a Union member employed in the County Treasurer's Office, was classified as a Clerk III in the agreement.

On August 14, 1981, Anderson filed a grievance with the Union alleging she was improperly classified in the agreement. The Union notified the County it intended to challenge Anderson's job classification. Attempts to resolve the dispute were unsuccessful, and on December 3, the Union notified the County it intended to arbitrate Anderson's grievance. The County refused to arbitrate, contending the dispute was not subject to arbitration because the parties agreed on Anderson's classification during contract negotiations.

The Union filed suit to compel arbitration. The trial court granted the County's motion for summary judgment, and denied the Union's claim that arbitration was appropriate. The Union appeals.

The sole issue presented is whether the dispute regarding Anderson's job classification is arbitrable under the agreement. The principles governing arbitration of labor disputes arising under a collective bargaining agreement are set forth in the "Steelworkers Trilogy"[1] and are

---

[1] *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 4 L. Ed. 2d 1403,

briefly summarized as follows:

(1) Although it is the court's duty to determine whether the parties have agreed to arbitrate a particular dispute, the court cannot decide the merits of the controversy, but may determine only whether the grievant has made a claim which *on its face* is governed by the contract. (2) An order to arbitrate should not be denied unless it may be said with positive assurance the arbitration clause is not susceptible of *an* interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. (3) There is a strong presumption in favor of arbitrability; all questions upon which the parties disagree are presumed to be within the arbitration provisions unless negated expressly or by clear implication.

*Council of Cy. & City Employees v. Spokane Cy.*, 32 Wn. App. 422, 424–25, 647 P.2d 1058 (1982); *see generally Meat Cutters Local 494 v. Rosauer's Super Mkts., Inc.*, 29 Wn. App. 150, 627 P.2d 1330 (1981).

Article 19 of the agreement contains a 3–step grievance procedure ending in arbitration. "Grievance" is defined in section 19.01 to include "any dispute or controversy which might arise as to the interpretation or application of this Agreement." Article 15, § 15.05(b) provides in part that "[e]mployees shall be placed in a pay range that is consistent with their duties, responsibilities and job content." Job and wage classifications are established in addenda to the agreement. The substance of the dispute between the Union and the County is whether the agreement places Anderson in the classification consistent with her job duties, responsibilities and job content. Because this dispute concerns the application of the agreement, this grievance is covered by the arbitration clause. *See Alden Cent. Sch. Dist. v. Watson*, 95 L.R.R.M. 2511 (N.Y. App. Div. 1977).

The County contends, however, that the bargaining history of the agreement establishes that the parties

80 S. Ct. 1343 (1960); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358 (1960).

intended to exclude classification disputes from the grievance and arbitration procedure.

> In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, . . .

*United Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 584–85, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960).

There is considerable divergence of opinion among the federal circuits as to whether bargaining history may be considered to establish a purpose to exclude a particular claim from arbitration. The Second, Third and Fourth Circuits have held that evidence of bargaining history is inadmissible. *See International Union of Elec., Radio & Mach. Workers v. General Elec. Co.,* 332 F.2d 485 (2d Cir. 1964); *Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp.,* 283 F.2d 93 (3d Cir. 1960); *A.S. Abell Co. v. Baltimore Typographical Union 12,* 338 F.2d 190 (4th Cir. 1964). The Seventh Circuit has adopted the most liberal rule of admissibility, allowing evidence of bargaining history relating to the underlying dispute even where the contract's arbitration clause is unambiguous. *See Independent Petroleum Workers of Am., Inc. v. American Oil Co.,* 324 F.2d 903 (7th Cir. 1963), *aff'd,* 379 U.S. 130, 13 L. Ed. 2d 333, 85 S. Ct. 271 (1964); *Local Union 483, Int'l Bhd. of Boilermakers v. Shell Oil Co.,* 63 L.R.R.M. 2173 (7th Cir. 1966). The Ninth and Fifth Circuits have taken the middle position, admitting evidence of bargaining history relating to the scope of the arbitration clause but disallowing evidence of bargaining history which touches upon the merits of the underlying dispute. *See Pacific Northwest Bell Tel. Co. v. Communications Workers,* 310 F.2d 244 (9th Cir. 1962); *Communications Workers v. Southwestern Bell Tel. Co.,* 415 F.2d 35 (5th Cir. 1969).

We need not decide which of these positions is the proper one. Assuming arguendo that all evidence of bargaining history may be considered, as the County contends, the dispute in question is still arbitrable in light of that addi-

tional evidence. The fact that the Union attempted and failed to obtain a different classification for Anderson during contract negotiations can be construed as evidence of an intent to exclude classification disputes from arbitration. *See Boilermakers.* This evidence is offset, however, by the affidavit of a Union negotiator stating that the parties orally agreed during negotiations to reserve several classification disputes for resolution through the agreement's grievance and arbitration procedure. The evidence is thus conflicting and does not constitute the "most forceful evidence of a purpose to exclude the claim from arbitration . . ." which is necessary to overcome the presumption of arbitrability. *Warrior & Gulf Nav. Co.,* 363 U.S. at 585.

Finally, the County contends that Anderson and the Union waived the right to arbitrate classification disputes by ratifying the agreement. We reject this argument on several grounds. A waiver of the right to arbitration will not be found absent conduct inconsistent with any other intention but to forgo that right. *Shoreline Sch. Dist. 412 v. Shoreline Ass'n of Educ. Office Employees,* 29 Wn. App. 956, 958, 631 P.2d 996, 639 P.2d 765 (1981). The Union members' ratification of the agreement after the Union tried, but failed, to obtain a higher classification for Anderson during negotiations does not establish that the Union intended to forgo the right to arbitration. *See Warrior & Gulf Nav. Co.* (union not precluded from arbitrating subcontracting dispute even though it failed to obtain provision prohibiting subcontracting during negotiations). Further, the grievance is Anderson's personal claim. The County fails to indicate how she waived her right to challenge the propriety of her classification. Additionally, it has been held that the issue of whether arbitration has been waived is one for the arbitrator to decide. *See Office & Professional Employees Int'l Union, Local 9 v. Allied Indus. Workers Int'l Union,* 90 L.R.R.M. 2129 (E.D. Wis. 1975), and cases cited therein.

For the foregoing reasons, we reverse and remand for the entry of judgment directing that the dispute be submitted

to arbitration.

DURHAM, C.J., concurs.

SCHOLFIELD, J. (dissenting)—I have no quarrel with the authorities cited by the majority nor the rules of law expressed by those decisions. Arbitration of disputes arising under collective bargaining agreements is both practical and desirable, and it is appropriate that the agreements be construed liberally in favor of the arbitration process.

The cases cited by the majority, however, do not support the majority's conclusion on the very narrow issue presented by this appeal: Whether an unambiguous term of a signed collective bargaining agreement is subject to arbitration for the purpose of changing the term agreed upon. Three weeks after the collective bargaining agreement was signed, Ms. Anderson filed a grievance alleging that her classification was improper. Local 231 concedes that Anderson's job and wage classification was agreed upon and is governed by the agreement, in which she was classified as a Clerk III with a salary level designation of range 8, step 7. The agreement on this point could not be more specific. Local 231 states in its brief that during negotiation of the collective bargaining agreement, the Union felt that the classification of Ms. Anderson as a Clerk III was improper. The agreement, however, does not make subject to arbitration an issue resolved in the agreement, regardless of whether the Union felt the issue was properly resolved.

The agreement defines a "grievance" subject to arbitration as "any dispute or controversy which might arise as to the interpretation or application of this Agreement". Section 19.01(a) requires employees to file a grievance within 30 days "of knowledge of its occurrence". These provisions clearly contemplate events, changes or issues arising after the signing of the collective bargaining agreement. Local 231 does not allege any such change in circumstances occurred after the agreement was signed. Nothing in the language of the agreement suggests that Local 231 can

expressly agree to a term in a collective bargaining agreement and then have that term renegotiated after the agreement is signed simply by contending that it is a proper subject of grievance and arbitration procedure.

In *Meat Cutters Local 494 v. Rosauer's Super Mkts., Inc.*, 29 Wn. App. 150, 627 P.2d 1330 (1981), in considering whether a dispute was subject to the arbitration provisions of a collective bargaining agreement, the court said at page 154:

> If the dispute can fairly be said to involve an interpretation of the agreement, the inquiry is at an end and the proper interpretation is for the arbitrator.

Under the facts of this case, there is nothing to arbitrate. Both parties agreed upon the precise classification and wage scale for Ms. Anderson in the collective bargaining agreement. There is nothing to interpret. The arbitration is sought by Ms. Anderson for the purpose of changing a term of the collective bargaining agreement.

It is hornbook law that a signed contract is binding on the parties as to all matters agreed upon in the contract. Ms. Anderson's classification as a Clerk III was as binding upon the parties as the duration of the agreement, paid holidays, work schedules or any other provision of the collective bargaining agreement.

The majority opinion states on page 717, "The substance of the dispute between the Union and the County is whether the agreement places Anderson in the classification consistent with her job duties, responsibilities and job content." This is precisely the issue that was resolved by the classification decided by the parties in the signed collective bargaining agreement.

The majority cites no authority for the proposition that a party is entitled to arbitrate as a grievance, after a collective bargaining agreement is signed, an issue that was unambiguously resolved and made a term of the collective bargaining agreement. I am not aware of any authority that would support this novel proposition.

If the classification of Ms. Anderson is subject to renego-

tiation through the arbitration process, then the next question is whether there is any provision of the collective bargaining agreement that is not subject to arbitration the day after the agreement is signed.

I dissent because I believe that under contract principles, the agreement was binding upon the Union and upon Ms. Anderson as to all issues resolved therein and that any grievance subject to arbitration must be based on facts and circumstances that arose after the collective bargaining agreement was signed. No such circumstances are involved in this case.

Review denied by Supreme Court December 19, 1984.