[No. 7058-8-II.   Division Two.   March 8, 1985.]

LOCAL UNION NO. 77, INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, *Appellant,* v. PUBLIC
UTILITY DISTRICT NO. 1, *Respondent.*

*Richard H. Robblee,* for appellant.

*Dustin C. McCreary,* for respondent.

REED, J.—Local 77 of the International Brotherhood of Electrical Workers (Union) appeals a summary judgment that dismissed its action to compel the Grays Harbor Public Utility District (PUD) to arbitrate a labor dispute. We reverse.

For several years the Union has been the recognized bargaining agent for those categories of employees specifically listed in its collective bargaining agreement with the PUD. Among the "types of employment" listed in the agreement are several grades of "metermen." According to the affidavits,[1] these metermen as a normal part of their employment over the years have provided PUD customers energy conservation advice when an "on–sight analysis" indicated that a high energy usage was not the result of a defective meter. Similarly, nonunion PUD employees also gave conservation advice based on a computer analysis of a customer's energy use. In 1976, however, the PUD created a home energy audit program run by a nonunion "administrative assistant" who both operated the computer and conducted in–field "energy audits." When in 1981 two more nonunion positions were added to this program, the Union

---

[1] An appellate court in reviewing a summary judgment engages in the same inquiry as the trial court. Thus, we consider all facts submitted and all the reasonable inferences from those facts in the light most favorable to the Union. *Zehring v. Bellevue,* 99 Wn.2d 488, 493, 663 P.2d 823 (1983), *vacated on rehearing,* 103 Wn.2d 588, 694 P.2d 638 (1985); *Blenheim v. Dawson & Hall, Ltd.,* 35 Wn. App. 435, 439, 667 P.2d 125, *review denied,* 100 Wn.2d 1025 (1983).

filed a grievance asserting that the "Energy Conservation Auditor should be a Bargaining Unit job." The PUD responded that the allegation was "not a grievance," and subsequently refused the Union's demand for arbitration. Although the trial court apparently agreed with this reasoning, we do not.[2]

Because PUD employees have the same collective bargaining rights as do similar employees in private industry, RCW 54.04.170, the arbitrability of this dispute is determined by reference to the substantive principles of federal labor law. *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457, 1 L. Ed. 2d 972, 77 S. Ct. 912, 923 (1957); *Meat Cutters Local 494 v. Rosauer's Super Mkts., Inc.*, 29 Wn. App. 150, 153, 627 P.2d 1330, *review denied*, 96 Wn.2d 1002 (1981); *Retail Store Employees Local 631 v. Totem Sales, Inc.*, 20 Wn. App. 278, 281, 579 P.2d 1019 (1978). Hence, our sole inquiry is to examine the arbitration clause of the collective bargaining agreement and determine whether the parties bound themselves to arbitrate this particular dispute. *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 568, 4 L. Ed. 2d 1403, 80 S. Ct. 1343 (1960); *Meat Cutters Local 494 v. Rosauer's Super Mkts., Inc.*, 29 Wn. App. at 154; *see Retail Store Employees Local 631 v. Totem Sales, Inc.*, 20 Wn. App. at 282. In so doing, we begin with the presumption that all questions upon which the parties disagree are within the arbitration provisions unless negated expressly or by clear implication. *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. at 581; *General Teamsters Local 231 v. Whatcom Cy.*, 38 Wn. App. 715, 717, 687 P.2d 1154 (1984); *Council of Cy. & City Employees v. Spokane Cy.*, 32 Wn. App. 422, 425–26, 647

---

[2]Although the PUD implies that some deference should be given to the trial court's conclusion, arbitrability is a matter of law and a reviewing court is obligated to make its own determination of the issue. *Davis v. Chevy Chase Fin. Ltd.*, 667 F.2d 160, 166–67 (D.C. Cir. 1981); *see Local 1296, Int'l Ass'n of Firefighters v. Kennewick*, 86 Wn.2d 156, 161–62, 542 P.2d 1252 (1975).

P.2d 1058, *review denied,* 98 Wn.2d 1002 (1982).

The PUD first asserts that a contractual question requiring arbitration is not involved because the Union's claim concerns "work and employee classifications which are not included in the Agreement." However, even frivolous claims are arbitrable, and a court has no business weighing the merits of a grievance or determining whether there is particular language in the labor agreement to support a claim. Such decisions are for the arbitrator; a *court's* inquiry is at an end if the complaint on its face calls for an interpretation of the agreement. *United Steelworkers v. American Mfg. Co.,* 363 U.S. at 568; *Hanford Guards Local 21 v. General Elec. Co.,* 57 Wn.2d 491, 494, 498, 358 P.2d 307 (1961); *Meat Cutters Local 494 v. Rosauer's Super Mkts., Inc.,* 29 Wn. App. at 154.

Here, the Union alleges that the creation of nonunion energy conservation positions was a "transfer of bargaining unit work" traditionally performed by a position already listed in the collective bargaining agreement. In order to determine if such a delegation of a union worker's duties and responsibilities has occurred, an interpretation of the contractual term "metermen" arguably is required. Where a provision of a collective bargaining agreement is subject to two interpretations, the one that would require arbitration should be adopted. *International Bhd. of Elec. Workers Local 483 v. Tacoma,* 20 Wn. App. 435, 437, 582 P.2d 522 (1978). Because we cannot characterize the alleged need for contract interpretation as "patently baseless," we hold that the instant dispute falls within the scope of the parties' labor agreement. *Hanford Guards Local 21 v. General Elec. Co.,* 57 Wn.2d at 494.

The PUD next claims that the parties agreed to exclude the controversy from arbitration, *cf. Nolde Bros. v. Local 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 255, 51 L. Ed. 2d 300, 97 S. Ct. 1067 (1977), and that it cannot be required to "submit to arbitration any dispute which [it] has not agreed so to submit." *See United Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. at 582. Arbi-

tration was "expressly" negated, the argument continues, because the agreement defines a "grievance" as a conflict over "express terms"[3] and here neither the energy audit positions nor their job descriptions were expressly included in the labor contract. However, a similar argument relying on a provision limiting arbitration to "specifically provided" obligations has been held insufficient to overcome the strong presumption favoring arbitrability. *Meat Cutters Local 494 v. Rosauer's Super Mkts., Inc.*, 29 Wn. App. at 156–59. The PUD's attempts to distinguish this precedent are not persuasive.

Alternatively, the PUD alleges that its duty to arbitrate was negated by "clear implication." It argues that the contract twice was renegotiated after the development of the "energy audit" program, but no attempt was made to incorporate the nonunion work into the labor agreement's list of union positions. Absent an express provision excluding a particular grievance, however, only the most forceful evidence of a purpose to exclude a claim from arbitration can prevail. *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. at 584–85; *General Teamsters Local 231 v. Whatcom Cy.*, 38 Wn. App. at 718–19. Assuming arguendo that bargaining history may be considered even when it results in construing substantive contract provisions "through the back door," *see* R. Gorman, *Basic Text on Labor Law* 561–63 (1976), there is no evidence that, prior to the contract negotiations, the Union actually was aware of the energy conservation program or its activities. An order to arbitrate will not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S.

---

[3]Article IV, section 2.2 of the collective bargaining agreement provides in pertinent part:

"Any dispute between the District and the Union or between the District and any employee covered by this Agreement concerning the interpretation, application, claim of breach or violation of the express terms of this Agreement shall be deemed a grievance."

at 582–83; *Council of Cy. & City Employees v. Spokane Cy.,* 32 Wn. App. at 425–26; *see Hanford Guards Local 21 v. General Elec. Co.,* 57 Wn.2d at 496–97. The PUD has failed to produce the "most forceful evidence" of an implied intent to exclude arbitration, and we cannot say with "positive assurance" that the arbitration clause does not govern the instant controversy.

■■ Finally, the PUD argues that the absorption of the new positions into the bargaining unit would be a contract modification exceeding the arbitrator's authority[4] and would violate public policy by imposing unionization without an election. However, the scope of an arbitrator's authority is "a question of contract interpretation that the parties have delegated to the arbitrator." *W.R. Grace & Co. v. Local 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers,* 461 U.S. 757, 76 L. Ed. 2d 298, 306, 103 S. Ct. 2177 (1983). It is *not* a ground for refusing to arbitrate. *Carey v. General Elec. Co.,* 315 F.2d 499, 507–08 (2d Cir. 1963), *cert. denied,* 377 U.S. 908 (1964); R. Gorman, *supra* at 557–58. On the other hand, public policy *is* a ground for refusing to enforce a collective bargaining agreement. *W.R. Grace & Co.,* at 766. Neither the record nor the PUD's argument on appeal reveals (1) how the energy audit positions would be affected by an arbitrator's decision favorable to the Union, (2) whether a union election is always necessary if a worker is summarily brought into the Union, or (3) whether a court should refuse to enforce arbitration *before* an arbitrator has had the opportunity to decide the question. *See Carey v. Westinghouse Elec. Corp.,* 375 U.S. 261, 271–72, 11 L. Ed. 2d 320, 84 S. Ct. 401 (1964); *International Union of Operating Eng'rs, Local 279*

---

[4]The "Step 3" provision of article IV, section 2.2 of the parties' agreement states:

"The arbitrator shall have no power to render a decision that will add to, subtract from, or alter, change or modify the terms of this Agreement, and the arbitrator's power shall be limited to interpretation or application of the express terms of this Agreement, and all other matters shall be excluded from arbitration."

*v. Sid Richardson Carbon Co.*, 471 F.2d 1175, 1177 (5th Cir. 1973); *Teamsters Local Unions v. Braswell Motor Freight Lines, Inc.*, 392 F.2d 1, 7–8 (5th Cir. 1968), *cert. denied*, 401 U.S. 937 (1971). In the absence of such proof and a well briefed discussion of the applicable law, we are ill equipped to venture into this esoteric field of labor law. Accordingly, we decline to address the issue. RAP 10.3(a)(4); RAP 10.3(a)(5); *Chambers–Castanes v. King Cy.*, 100 Wn.2d 275, 290, 669 P.2d 451 (1983); *see Barnes v. Washington Natural Gas Co.*, 22 Wn. App. 576, 577, 591 P.2d 461 (1979).

In conclusion, while on the record before us we have serious doubts concerning the merits of the Union's position, under the agreement that decision is for the arbitrator and not for the courts.

Reversed and remanded for the entry of a judgment ordering arbitration.

WORSWICK, C.J., and ALEXANDER, J., concur.