[No. 31522-3-III. Division Three. May 22, 2014.]

SPOKANE SCHOOL DISTRICT NO. 81, *Respondent*, v. SPOKANE EDUCATION ASSOCIATION, *Appellant*.

*Michael M. Parker* (of *Powell Kuznetz & Parker PS*), for appellant.

*Paul E. Clay* (of *Stevens Clay & Manix PS*), for respondent.

¶1 SIDDOWAY, C.J. — The Spokane Education Association is the exclusive bargaining representative for teachers and other certificated employees of Spokane School District No. 81. It appeals the trial court's decision enjoining its efforts to arbitrate a grievance that it filed against the district on behalf of a school counselor who was then a provisional employee, after the district decided not to renew her contract. We agree with the trial court that as framed, and given the relief requested by the grievance, it was not eligible for arbitration under the parties' collective bargaining agreement. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Nikki Easterling was hired by Spokane School District No. 81 and began working as an elementary counselor at Regal Elementary in August 2010. In June 2011, after completing her first school year in the position, Ms. Easterling and the school's principal, Mallory Thomas, participated in a year-end review. A memorandum summarizing the meeting states that Ms. Easterling was counseled about attendance issues. She did not challenge the memorandum at the time.

¶3 In December 2011, Ms. Easterling participated in a meeting with Ms. Thomas and Bonnie Ducharme, a supervisor of elementary counselors. Ms. Easterling contends that the meeting was to discuss the goals of serving students eligible for accommodation under section 504 of

the Rehabilitation Act of 1973.[1] Ms. Thomas's memorandum summarizing the meeting characterized it differently, describing the purpose of the meeting as to review other matters, including morning arrival time and goal sheets for school counselors. Ms. Easterling did not challenge this memorandum at the time, but now characterizes it as an inaccurate reflection of what occurred.

¶4 In January 2012, Ms. Easterling took bereavement leave following the death of her aunt. She claims that Ms. Thomas's treatment of her changed thereafter. Instead of face-to-face interaction with Ms. Thomas, she claims to have received "harassing emails . . . containing factual inaccuracies or complete misstatements." Clerk's Papers (CP) at 254. She complains that she was required to wear a walkie-talkie, was reprimanded for taking a student for a therapeutic walk, was told that permission slips would be required for walks in the future, was told that items that had been collected in a donation drive needed to be removed from the school, and was required to man the dunk tank at the school carnival.

¶5 On February 1, Ms. Easterling received a notice from Ms. Thomas that she wanted to meet. Having become concerned about her job security, Ms. Easterling contacted her union, the Spokane Education Association. The union appointed Mike Boyer to represent her. Mr. Boyer contacted Ms. Thomas about the requested meeting, after which Ms. Thomas canceled it.

¶6 On May 3, Ms. Easterling received a phone call from Brent Perdue, an employee in the district's human resources department, who told Ms. Easterling that she should contact her union representative. In several conversations occurring in the week thereafter, Mr. Perdue spoke

---

[1] Section 504, currently codified at 29 U.S.C. § 794(a), provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

to Ms. Easterling about resigning her position rather than face nonrenewal. The district does not dispute that Mr. Perdue conveyed the option for Ms. Easterling to resign. It claims to have had an understanding with the union and a long-standing practice of allowing provisional employees to resign rather than receive a potentially more stigmatizing notice of nonrenewal.

¶7 Ms. Easterling did not agree to resign, and on May 9 the district sent a letter notifying her that it would not renew her contract; she received it on May 11. The reasons stated for the nonrenewal were persistent late arrival, inappropriate absences, and lack of responsiveness to administrator requests. That same day, and apparently before Ms. Easterling picked up her mail, Mr. Boyer filed a grievance on her behalf. The remedy requested by the grievance was a finding of violations of the collective bargaining agreement (CBA) between the union and the district as well as violations of chapter 41.59 RCW, and that Ms. Easterling "be ordered by an Arbitrator to be granted another year of provisional status." CP at 279.

¶8 The CBA includes an article VII, entitled "Settlement of Grievances." CP at 109. Section 6 of the article sets forth a grievance process that may include up to five steps—an informal step and formal steps that it refers to as steps one, two, three, and four.

¶9 The informal step is for the employee to attempt to resolve the grievance with her or his immediate supervisor. If that does not resolve the issue, then step one provides that the grieved matter be reduced to writing and submitted to the principal or supervisor, after which a conference is arranged to discuss it. If the grievant is not satisfied with the outcome, step two provides that the grievance be submitted to the school superintendent, who will then meet with the grievant in an attempt at resolution. Step three provides that grievances not resolved by earlier steps may be discussed at a labor management meeting. Step four allows the parties to submit grievances to binding arbitra-

tion, subject to limitations set forth in section 3 of article VII.

¶10 On May 16, an informal grievance meeting occurred. Afterward, Mr. Boyer filed an amended grievance on behalf of Ms. Easterling. Both the initial and amended grievance appear to be based on Ms. Easterling's nonrenewal; in complaining of the nonrenewal, they refer to allegedly retaliatory actions taken by Ms. Thomas, the district's alleged failure to follow progressive discipline procedures, its alleged failure to notify Ms. Easterling of her rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654, and alleged procedural irregularities. Like the original grievance, the remedy requested by the amended grievance was that an arbitrator grant Ms. Easterling another year of provisional status.

¶11 On September 14, Mr. Boyer, again acting on behalf of Ms. Easterling, attempted to commence arbitration through a letter to the American Arbitration Association (AAA) requesting a "list with appointment" for an "upcoming arbitration" between the union and the district. CP at 157 (emphasis omitted). He did so despite his awareness that the district disputed the arbitrability of the grievance. The AAA responded by providing the union and the district with a list of proposed arbitrators with instructions to strike objectionable arbitrators and rank the remaining arbitrators as part of a joint selection process.

¶12 The district evidently refused to participate as a practical matter. Although our record of communications among the parties' representatives and the AAA is incomplete, it includes Mr. Boyer's e-mailed complaint to the district's representative that "you seem to feel you can simply strike all names continually and continue to ignore this." CP at 161. Having realized that the district would not cooperate in selecting an arbitrator, Mr. Boyer modified his request, asking the AAA to appoint one.

¶13 The district responded by filing a motion for temporary restraining order preventing the union from proceed-

ing with arbitration, which was granted. The district's request for a preliminary injunction was heard on December 14. The trial court entered a preliminary injunction, and this appeal followed.

## ANALYSIS

¶14 The union brings this appeal, making two assignments of error to the order enjoining arbitration of Ms. Easterling's grievance. The first is that the court erred in concluding that the grievance was not arbitrable, an asserted error of law. The second is that the court did not properly balance the parties' interests in entering an injunction, an abuse of discretion. We address the two issues in turn.[2]

### I. Arbitrability of Issues Raised by the Grievance

¶15 The union appeared to argue in its opening brief on appeal that the arbitrator, rather than the trial court, should have determined the arbitrability of issues raised by the grievance. Its reply brief clarifies its position: it agrees that arbitrability was an issue for the court. At the same time, it emphasizes that while it is the court's job to determine whether an issue is arbitrable under the CBA, it is not the court's job to determine the merits of the alleged grievances. *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Emps. of Peninsula*, 130 Wn.2d 401, 413, 924 P.2d 13 (1996). The district does not disagree.

---

[2] As a preliminary matter, the district points out that the union failed to assign error as required by RAP 10.3(g) to the trial court's findings of fact and conclusions of law. *See* CP at 410-11. "RAP 10.3 requires an appellant to present argument to the reviewing court as to why specific findings of fact are in error and to support those arguments with citation to relevant portions of the record." *In re Disciplinary Proceeding Against Whitney*, 155 Wn.2d 451, 466, 120 P.3d 550 (2005). However, "[a]n appellant's failure to properly assign error [may] be excused . . . when the nature of the challenge is perfectly clear." *State v. Slanaker*, 58 Wn. App. 161, 166, 791 P.2d 575 (1990).

Here, the union assigned error generally to the trial court's ultimate conclusion of nonarbitrability and the injunction issued by the trial court. *See* Br. of Appellant at 3. Its briefing makes its challenges sufficiently clear for our review.

¶16 The core issue of this appeal, then, is whether the grievance filed by the union on Ms. Easterling's behalf was arbitrable, in whole or in part, under the CBA.

¶17 The principles governing a court's duty to order arbitration of labor disputes arising under a CBA were articulated in three cases decided by the United States Supreme Court, referred to as the "Steelworkers Trilogy": *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); and *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960). Washington cases have summarized the holdings of those cases as follows:

> "(1) Although it is the court's duty to determine whether the parties have agreed to arbitrate a particular dispute, the court cannot decide the merits of the controversy, but may determine only whether the grievant has made a claim which *on its face* is governed by the contract. (2) An order to arbitrate should not be denied unless it may be said with positive assurance the arbitration clause is not susceptible of *an* interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. (3) There is a strong presumption in favor of arbitrability; all questions upon which the parties disagree are presumed to be within the arbitration provisions unless negated expressly or by clear implication."

*Gen. Teamsters Local No. 231 v. Whatcom County*, 38 Wn. App. 715, 717, 687 P.2d 1154 (1984) (quoting *Council of County & City Emps. v. Spokane County*, 32 Wn. App. 422, 424-25, 647 P.2d 1058 (1982)). While favoring arbitration, the cases respect any clear agreement by a union and an employer that certain types of grievances are not arbitrable.

¶18 In the case of these parties, the CBA makes most grievances arbitrable, defining "grievance" to mean "an

alleged violation of a specific term of this Agreement or a dispute regarding an interpretation of the Agreement." CP at 109. But some grievances are explicitly excluded from step four of the grievance process, providing for arbitration. Article VII, section 3(B) of the CBA, entitled "Limitations on Grievances," provides:

> Non renewal of provisional employees and matters relating to evaluation and placement of employees on probation shall be grievable only through Step Three of the grievance procedure. Such grievance shall pertain solely to alleged procedural discrepancies. Following Step Three of the grievance procedure, non renewal of provisional employees, matters relating to evaluation, placement of employees on probation, and non renewal or discharge matters shall be governed and controlled by the rights, procedures, and remedies afforded by statute.

CP at 109-10.

¶19 The statute contemplated in the last sentence of the section is RCW 28A.405.220, which is contained in Title 28A RCW, dealing with public schools. RCW 28A.405.220 incorporates evaluation requirements for certificated employees of public schools provided by RCW 28A.405.100 and gives provisional employees a right to pursue a statutory process for appealing timely notices of nonrenewal.

## A. Evaluation and nonrenewal matters

¶20 We turn first to the trial court's conclusion that some matters that the union sought to submit to arbitration were excluded from arbitration by article VII, section 3 of the CBA as "nonrenewal" matters or as "matters relating to evaluation" that are grievable only through step three of the grievance procedure.

¶21 The parties offer conflicting characterizations of precisely what the union was attempting to grieve on Ms. Easterling's behalf. The district treats the union's grievance as relating only to the nonrenewal and to issues that were (or were perceived to be) the district's grounds for

electing not to renew her contract. The union insists that it grieved matters distinct from the district's evaluation of Ms. Easterling and her nonrenewal.

¶22 Both the original and amended grievances filed by the union stated that "[t]he non-renewal/non-retention of Nikki Easterling that is in the planning stages by the District is what is being grieved." CP at 153, 279. In this court, the union has wisely retreated from this articulation of the grievance, conceding that by the express terms of the CBA, the district's nonrenewal of Ms. Easterling's contract was grievable only through step three. The trial court did not err in finding that the nonrenewal was not subject to arbitration.

B. Issues allegedly distinct from evaluation or nonrenewal

¶23 The union contends that it also grieved matters it claims are distinct from evaluation and nonrenewal. Those allegedly distinct matters are the district's (1) alleged violation of Ms. Easterling's right to progressive discipline, (2) alleged retaliation, (3) procedural inconsistencies, and (4) failure to inform Ms. Easterling of her FMLA rights. It argues that the fact that one matter included in a grievance might not be grievable under the CBA (here, nonrenewal) should not exclude arbitration of other grievable items. It cites *North Beach Education Ass'n v. North Beach School District No. 64*, 31 Wn. App. 77, 639 P.2d 821 (1982) as support.

¶24 There is a significant difference between this case and *North Beach*, which turned on statutory constraints on an arbitrator's authority rather than on the terms of a CBA. The parties to the CBA at issue in *North Beach* had "contracted to submit a large variety of matters to grievance arbitration," with "grievance" broadly defined—so broadly defined that it included the substance of the union's grievance, which was the district's " 'actions relating to Evaluation, Probation and Non-renewal.' " *Id.* at

83-84 & n.6. In *North Beach,* the union's grievance proceeded to arbitration, apparently without any dispute that it belonged in arbitration given the breadth of the parties' agreement to arbitrate.

¶25 Nonetheless, because Washington statutes delegated exclusive decision-making power on renewal to a district's school board, the arbitrator was persuaded by the school district that despite the breadth of the CBA arbitration provision, the arbitrator was powerless to redress a teacher's grievance over her evaluation and nonrenewal. On appeal, the court disagreed, holding that where the parties' arbitration agreement was broad enough to include arbitration of nonrenewal and related matters, the only limitation on the arbitrator's authority posed by Washington statutes was that the arbitrator could not reinstate the employee to full contract status and thereby effectively countermand the school board's decision.

¶26 Here, by contrast, we are dealing with a narrower arbitration clause—one that explicitly excludes evaluation and nonrenewal. Rather than consider the impact of any statute, we are engaged in an examination of what the parties agreed to arbitrate, what they excluded from arbitration, and into which of those two categories the issues the union characterizes as "distinct" from nonrenewal fall. *North Beach* is inapposite.

¶27 We turn to the matters the union sought to grieve on behalf of Ms. Easterling that it contends are distinct from evaluation and nonrenewal.

### 1. Progressive Discipline

¶28 The union asserts that the district failed to employ progressive discipline in its dealings with Ms. Easterling as required by the CBA. Section 22(A) of the CBA provides:

> The District has the right to discipline, suspend, or dismiss for just cause. Prior to instituting progressive discipline steps, the District will have made a reasonable attempt to counsel with the employee and to clarify job expectations.

CP at 90. In its initial grievance the union asserted that "[t]he attempt to non-renew the Grievant is in violation of Article IV, Section 22, the Evaluation portions of the CBA." CP at 279. In its amended grievance, it asserts that

> [d]uring the informal grievance meeting, several emails and two memos were brought forward by the District which attempted to deny that the non-renewal was for retaliatory reasons. The difficulty is that *none of these emails (or memos) dealt with the issues brought forward in the proper manner. In other words, problems with the performance of the Grievant should have utilized the Evaluation system . . . and any discipline should have been dealt with through Article IV, Section 22.*

CP at 153 (emphasis added).

¶29 The union argues that if we do not recognize the distinct character of prenonrenewal matters such as Ms. Thomas's asserted failure to counsel Ms. Easterling and clarify job expectations, then the district may violate the CBA during a provisional employment period and avoid any duty to account by serving a notice of nonrenewal that cuts off grievance rights. It poses the rhetorical question: "[I]f the nonrenewal had not been issued, would the matters listed in the grievance by [the union] be subject to the CBA and arbitration? [The union] believes the resounding answer would be yes." Reply Br. of Appellant at 4.

¶30 We agree that the answer to the union's rhetorical question would be yes. But had Ms. Easterling grieved perceived violations of the progressive discipline requirement absent any notice of nonrenewal, she would have been seeking a different remedy, such as additional counseling, clarification, or correction. An earlier grievance, seeking that different sort of redress, would not implicate the parties' clear, negotiated agreement that evaluation and nonrenewal decisions were not arbitrable.

¶31 The problem with the union's position is that it is precisely because the nonrenewal did issue, *and because it*

*is the nonrenewal development that she is seeking to avoid,* that Ms. Easterling's grievance necessarily implicates the district's nonarbitrable evaluation and nonrenewal decisions and thereby falls within the CBA's exclusion of those matters from arbitration.

¶32 We can conceive of a nonrenewed employee having a grievable issue that is truly distinct from nonrenewal, in the sense that the remedy being pursued is not relief from the nonrenewal decision. A district's failure to pay accrued vacation pay would be an example. If an employee was seeking only that earned pay but not challenging any loss flowing from the nonrenewal of her employment, she would appear to state an arbitrable grievance. Here, by contrast, the only remedy requested by the union's initial and amended grievances on behalf of Ms. Easterling is an arbitrator-ordered additional year of provisional status. When asked at oral argument whether an arbitrator-ordered year of employment would not undermine the negotiated limitation on arbitration of nonrenewal, the union's lawyer responded that perhaps the arbitrator could instead award damages equal to the salary and benefits that Ms. Easterling would have earned from that additional year of employment. Yet that, too, would undermine the parties' negotiated limitation on arbitration.

¶33 A CBA is a contract, whose construction is governed by ordinary principles of contract law. *See Barclay v. City of Spokane*, 83 Wn.2d 698, 700, 521 P.2d 937 (1974); *Kitsap County Deputy Sheriff's Guild v. Kitsap County*, 148 Wn. App. 907, 910, 201 P.3d 396 (2009) (citing *Barclay*, 83 Wn.2d at 700). One such principle is that an interpretation that gives a reasonable, fair, just, and effective meaning to all manifestations of intention is preferred to an interpretation that leaves a part of such manifestations unreasonable, imprudent, or meaningless. *Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys.*, 104 Wn.2d 353, 373, 705 P.2d 1195, 713 P.2d 1109 (1985). Another is that we will not give effect to an interpretation that would render

contractual obligations illusory. *Taylor v. Shigaki*, 84 Wn. App. 723, 730, 930 P.2d 340 (1997).

¶34 The CBA's "Limitations on Grievances" provision states that "[n]on renewal of provisional employees and matters relating to evaluation . . . shall be grievable only through Step Three" and that a grievance of that sort could pertain "solely to alleged procedural discrepancies." CP at 109-10. According to the provision, this is with the understanding that after step three, "non renewal of provisional employees, matters relating to evaluation, . . . and non renewal or discharge matters shall be governed and controlled by the rights, procedures, and remedies afforded by statute." CP at 109-10.

¶35 If a provisional employee could grieve alleged CBA violations that she claimed led to an adverse evaluation and nonrenewal, could request a remedy that would compensate her economic loss from the nonrenewal, and could then demand that her grievance and request for relief be resolved through arbitration under step four, then the limitations on grievances provision would be meaningless to the district. The union's agreement to resolve nonrenewal and discharge matters through statutory procedures would be illusory.

¶36 No fair reading of the CBA can support the result advocated by the union. The trial court properly concluded that Ms. Easterling's claims of progressive discipline violations, given the remedy she sought, were not arbitrable.

## 2. Retaliation

¶37 The union next argues that the retaliation Ms. Easterling was seeking to grieve occurred before the district's notice of nonrenewal; it now denies that she was seeking to grieve the nonrenewal itself as a retaliatory action. It points to allegedly retaliatory acts taken by Ms. Thomas before May 2012, such as sending harassing e-mails, requiring Ms. Easterling to carry a walkie-talkie, and requiring permission slips.

¶38 Here, too, Ms. Easterling's complaints of retaliation, even if grievable when they occurred, are not grievable as a basis for challenging the district's evaluation and nonrenewal decision. And avoidance of the nonrenewal decision, through an arbitrator-ordered additional year of provisional employment, is the remedy she seeks. Neither her grievances nor her argument on appeal suggests how the alleged acts of retaliation gave rise to any distinct harm, unrelated to the evaluation and nonrenewal, that can be remedied at this late date.

¶39 The trial court properly viewed her grievance as necessarily challenging the district's evaluation and nonrenewal decision and therefore as excluded from an arbitration remedy by article VII, section 3.

### 3. Procedural Inconsistencies

¶40 Ms. Easterling next contends that there were procedural discrepancies that occurred during the course of this matter that were grievable under the CBA. Specifically, within several days after she received her notice of nonrenewal, an informal meeting was held pursuant to step one, with Mike Boyer, Ms. Easterling, Jenny Rose (the president of the union), Mr. Perdue, and Tenille Jeffries Simmons (chief human resources officer for the district) in attendance. Following the meeting, the union amended the grievance on behalf of Ms. Easterling to complain that Ms. Thomas had not been present at the step one conference.

¶41 After providing that "[n]on renewal of provisional employees and matters relating to evaluation . . . shall be grievable only through Step Three" of the grievance procedure, the CBA goes on to state that "[s]uch grievance shall pertain solely to alleged procedural discrepancies." CP at 109-10. Accordingly, procedural discrepancies arising during the processing of a grievance are themselves subject to the article VII, section 3 limitations and are therefore not arbitrable. Were that not clear from the language of the

provision itself we would conclude, as we have above, that because the only remedy sought by the amended grievance is another year of provisional employment the grievance is essentially challenging the district's evaluation and nonrenewal, thereby subjecting that basis for the grievance to article VII, section 3.

## 4. FMLA

¶42 Finally, Ms. Easterling indicated in her amended grievance that the reason for her persistent tardiness was most often her daughter's severe allergies and, when an allergic reaction occurred, her need to stabilize her daughter before leaving for school. Her initial grievance did not mention an FMLA-related issue at all. She contends on appeal that the district should have notified her of her state and federal FMLA rights and made a reasonable accommodation for her situation.

¶43 As with the other issues that were ostensibly distinct from Ms. Easterling's challenge to her nonrenewal, the fact that she requests the remedy of another year of provisional employment reveals that this, too, is essentially a challenge to the district's evaluation and decision not to renew her contract. In the case of this FMLA-related issue, there is an additional reason why the trial court properly determined that it was nonarbitrable: it is not contract-based and therefore does not qualify as a grievance.

¶44 After representing that Ms. Easterling gave her principal verbal notice of a family health-related reason for her tardiness, the amended grievance stated only that

[a]s such, the District was under verbal notice of the need for Nikki, as the parent of a severely asthmatic child, to receive some type of "reasonable accommodation." [Ms. Easterling's principal] is . . . responsible, under such circumstances, to notify the district of the Grievant's unique issues and work with the District compliance officer to establish an appropriate reasonable accommodation for Nikki (and her daughter). At a

minimum the District should have notified the Grievant of her state and federal FMLA rights.

CP at 154.

¶45 The amended grievance identified the contractual basis of "all of the . . . listed issues" as article IV, section 22; the evaluation portions of the CBA (article IV, section 20); and article VII (Grievance). CP at 154. On appeal, the union characterizes "[t]he Family Leave issue" as "involv[ing] the supervisor failing to properly inform Ms. Easterling of her rights under [FMLA]," which it claims was a violation of the CBA, citing article V, sections 4 and 5. Reply Br. of Appellant at 15.

¶46 The union fails to identify any language in sections 4 and 5 of article V that is a source of the district's ostensible FMLA-related duty to notify Ms. Easterling of her statutory rights. Those sections state, in their entirety:

### Section 4 - Family Care Leave

Employees shall be allowed to use their accrued sick leave to care for immediate family members with a health condition that requires treatment or supervision. Immediate family is defined as parent, parent-in-law, brother, sister, husband, wife, son, daughter, or person with whom one has had association equivalent to these family ties.

### Section 5 - Family and Medical Leave

Any eligible employee is entitled to a total of twelve (12) work-weeks of family and medical leave during any fiscal year (September 1 - August 31), as provided for in District Policy No. 5242, as currently revised. See Addendum B.

CP at 96.

¶47 The right to arbitration under the CBA is limited to grievances eligible for step four, and only contractual issues—alleged violations of "a specific term" of the CBA or issues of contractual interpretation—fall within the CBA's definition of a "grievance." CP at 109 (article VII, section 1(A)). Contrary to RAP 10.3(a)(6), the union has failed to provide us with a reference to the language on which it relies for a contractual

dispute or argument as to why that language supports a contractual duty of accommodation or notification. The district pointed out the union's failure to identify a contractual basis for an FMLA-related grievance in the trial court, and the union's response to the challenge was similarly deficient there. *See* CP at 228.

¶48 For both reasons, then, the trial court did not err in determining that Ms. Easterling's FMLA-related complaint did not present a grievance that was subject to the CBA's arbitration procedure.

### 5. Other Arguments

¶49 The union finally argues that language in the preamble to the CBA prohibits the district from using a notice of nonrenewal to trump an employee's grievance. It directs our attention to language that speaks of the district and the union being "committed to the development of a trusting, respectful environment where the participation of all school employees in the work of improving student learning is encouraged and expected" and to, e.g., the preamble's reference to "a strong commitment to . . . refrain from making judgments until we have a clear understanding of the issues involved [and] provide individuals with the opportunity to be involved in those decisions that directly affect their work situation." CP at 33.

¶50 In construing a contract, we will not read the language of a preamble to contradict the contract's specific provisions outlining the grievance process and imposing limitations on which grievances may be arbitrated. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002) ("It is a fundamental axiom of contract interpretation that specific provisions control general provisions." (citing RESTATEMENT (SECOND) OF CONTRACTS § 203(c) (1981))).

¶51 Finally, the union argues that the district's reliance on a notice of nonrenewal as a basis for avoiding

arbitration of grievances constitutes a violation of the district's duty of good faith. In every contract there is an implied covenant of good faith and fair dealing. *Metro. Park Dist. of Tacoma v. Griffith*, 106 Wn.2d 425, 437, 723 P.2d 1093 (1986). This is not a "free floating" duty, unattached to an existing contract; rather, it exists only in relation to performance of specific contract terms. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177, 94 P.3d 945 (2004) (if no specific contractual duty exists, there is nothing that must be performed in good faith).

¶52 The district had no duty to arbitrate matters that it had not agreed to arbitrate under the CBA. Because it had no duty to arbitrate, it could not have breached its duty of good faith by standing by its contractual rights.

## II. Exercise of Discretion in Granting Preliminary Injunction

¶53 The union makes a second argument that the trial court failed to engage in a required balancing of interests in granting the preliminary injunction. In this case, the district pursued relief under chapter 7.40 RCW, dealing with injunctions, rather than moving to stay arbitration under the uniform arbitration act, chapter 7.04A RCW, which bases the stay decision on the pure issue of whether an issue is arbitrable rather than on additional considerations that come into play under the more broadly applied injunction provisions. *See* RCW 7.04A.070(2). Because the district proceeded under chapter 7.40 RCW, we review the standards applied in granting injunctive relief under that chapter.

¶54 The showing required for issuance of a preliminary injunction is well settled:

"[O]ne who seeks relief by temporary or permanent injunction must show (1) that he has a clear legal or equitable right, (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him."

*Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000) (alteration in original) (internal quotation marks omitted) (quoting *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982)). If a moving party fails to establish any one of these elements, the relief must be denied.

¶55 A trial court's decision to grant an injunction and its decision regarding the terms of the injunction are reviewed for abuse of discretion. *Wash. Fed'n of State Emps. v. State*, 99 Wn.2d 878, 887, 665 P.2d 1337 (1983). A trial court abuses its discretion if the decision is based on untenable grounds, or the decision is manifestly unreasonable or arbitrary. *Speelman v. Bellingham/Whatcom County Hous. Auths.*, 167 Wn. App. 624, 630, 273 P.3d 1035 (2012).

¶56 *Clear legal or equitable right.* Based on the limitations on grievances provided by the CBA, the district has the right not to be subjected to arbitration of disputes that involve nonrenewal of provisional employees and other issues relating to the nonrenewal. It has a right not to be subjected to arbitration of issues that are unrelated to violations of the CBA or interpretation of the CBA. A party cannot be required to submit to arbitration any dispute to which he has not agreed to so submit. *Meat Cutters Local No. 494 v. Rosauer's Super Mkts., Inc.*, 29 Wn. App. 150, 154, 627 P.2d 1330 (1981). The district had a clear legal right not to be subjected to arbitration of nonarbitrable matters.

¶57 *Fear of immediate invasion of the right.* Once the union submitted an arbitration demand to the AAA, the district had a reasonable fear that the organization would move forward to schedule arbitration. The union's argument that this element was not shown is predicated on its flawed assumption that the arbitration the AAA was preparing to conduct was one to which Ms. Easterling was entitled. The court did not err in finding that the district demonstrated the showing required for injunctive relief.

¶58 *Actual and substantial injury.* The third element required to obtain injunctive relief is that the acts com-

plained of will result in substantial and actual injury to the moving party. The trial court concluded that the injuries here were numerous, including but not limited to loss of time for district staff to prepare for and participate in an uncalled for arbitration, attorney fees for preparation and attendance at arbitration, loss of the bargained-for right not to be subject to arbitration, and establishing precedent allowing the union to ignore the terms of the CBA. The court did not abuse its discretion in finding that the district would suffer actual and substantial injury if it was forced to arbitrate matters that were not arbitrable under the CBA.

¶59 Given the presence of all three elements of the required showing, the trial court cannot be said to have abused its discretion in granting the injunction.

¶60 The union nonetheless contends that the district waived its right to be free from arbitration by participating in the AAA striking process. "Waiver" is the "voluntary relinquishment of a known right." *Cornerstone Equip. Leasing, Inc. v. MacLeod*, 159 Wn. App. 899, 909, 247 P.3d 790 (2011) (citing *Seattle-First Nat'l Bank v. Westwood Lumber, Inc.*, 65 Wn. App. 811, 826, 829 P.2d 1152 (1992)). It is an "equitable principle that can apply to defeat someone's legal rights where the facts support an argument that the party relinquished their rights by delaying in asserting or failing to assert an otherwise available adequate remedy." *Albice v. Premier Mortg. Servs. of Wash., Inc.*, 174 Wn.2d 560, 569, 276 P.3d 1277 (2012).

¶61 The district did not waive its right to be free from arbitration. From the beginning of Ms. Easterling's grievance procedure, the district communicated its position that the matters raised by Ms. Easterling were not arbitrable. On the day before the step one meeting, Mr. Boyer acknowledged as much, sending an e-mail to Mr. Perdue stating that "the district can certainly continue to assert that Nikki's grievance is somehow not arbitrable . . . but if [the union] wants the matter to go to arbitration it WILL go before an arbitrator." CP at 313 (first alteration in original).

¶62 Mr. Boyer submitted his request that the AAA commence arbitration proceedings knowing that it was the district's position that the parties' dispute was not arbitrable. The union cannot credibly complain that it was misled about the district's position; at most, it points to the fact that the district did not immediately take legal action to stop the union's objectionable course of action. The district's protection of its interests by responding to correspondence from the AAA during the short period of time before it filed its request for injunctive relief did not operate as a waiver. *Cf. River House Dev., Inc. v. Integrus Architecture, PS*, 167 Wn. App. 221, 237, 272 P.3d 289 (2012) (party waived right to arbitrate by attending in-person status conference, agreeing to trial schedule and date, exchanging pretrial report, serving and responding to formal discovery including arguing motions to compel, and representing to the court that it was preparing for trial).

¶63 Affirmed.

BROWN and FEARING, JJ., concur.